Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of DELIA NESTOR, Widow, Respondent, on Behalf of Herself and Infant Son, for the Death of ANDREW NESTOR, *v.* PABST BREWING COMPANY, Employer, and STANDARD ACCIDENT INSURANCE COMPANY Insurance Carrier, Appellants.

Third Department, March 11, 1920.

**Workmen's Compensation Law — dislocated shoulder — subsequent fall followed by death — no evidence to sustain finding as to cause of death or that it was induced by first accident — consideration of opinion of chief medical examiner rendered outside hearing improper.**

The decedent sustained injuries on June 1, 1918, consisting of a dislocated shoulder and contusions and several weeks thereafter he fell in the street and was assisted to his home where he died the same day without medical attendance. The death certificate, which was signed by a person who had never seen the decedent in his life, stated that the cause of death was "chronic cardiac valvular disease." The physician who attended decedent after the first accident testified that he examined his heart and found no difficulty therewith and the decedent's widow testified that the decedent had never had heart trouble.

*Held,* that there was no evidence to support the finding that "The cause of death is given as ' chronic cardiac valvular disease.' The injuries sustained on June 1, 1918, so aggravated a previously existing heart lesion as to bring about decompensation and an acute condition which resulted in the death " of the decedent, as the death certificate being presumptive evidence only was conclusively overcome by the testimony of the physician and the circumstances under which the certificate was made.

The opinion rendered by the chief medical examiner of the Commission did not supply the deficiency as it was rendered outside of the hearing and assumed the cause of death to be as stated in the death certificate and is based thereon.

JOHN M. KELLOGG, P. J., dissents, with opinion.

APPEAL by the defendants, Pabst Brewing Company and another, from a decision and award of the State Industrial Commission, made on or about the 24th day of February, 1919.

*Neile F. Towner,* for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

COCHRANE, J.:

The question in this case is whether any causal relation between the injury and death of the deceased has been established.

On June 1, 1918, Andrew Nestor, the husband of the claimant, sustained injuries consisting of a dislocated shoulder and contusions. The dislocation was immediately reduced and he remained under the care and treatment of a physician until July 5, 1918. He never resumed work. On July 21, 1918, he fell in the street and was assisted to his home where he died the same day without medical attendance. The death certificate filed in the department of health of the city of New York recited that " the chief and determining cause of his death was chronic cardiac valvular disease."

The finding of the Commission connecting the death with the accident is as follows: " The cause of death is given as ' chronic cardiac valvular disease.' The injuries sustained on June 1, 1918, so aggravated a previously existing heart lesion as to bring about decompensation and an acute condition which resulted in the death of Andrew Nestor on July 21, 1918."

There is absolutely no evidence that the deceased had a heart lesion at the time of the accident. There is no evidence that the cause of death was heart disease unless it be the death certificate. It is stated that this constituted some evidence of such fact, but if so it was only presumptive evidence of the facts therein stated. And a presumption disappears in the presence of substantial evidence to the contrary. (*Rose* v. *Balfe*, 223 N. Y. 486; *Potts* v. *Pardee*, 220 id. 431; *Fallon* v. *Swackhamer*, 226 id. 447.) The only physician called as a witness was Dr. Smith who treated the deceased from June 3, 1918, until July 5, 1918, always at his office where the deceased went to receive such treatment. He examined his heart twice during that time and found no difficulty therewith. On the latter date he discharged the patient. When he discharged him he did not think the deceased had any condition which would cause death in a short time. When the death certificate was called to the attention of the physician he testified that he did not think the injury had anything to do with his death. He further testified: " I don't think he died with the cause of death as written on that death certificate — I don't think that

is the real cause of death.  *  *  *  There is nothing in this injury, as far as I could see, that could have anything to do with it." The widow of deceased testified that he never had heart trouble or was sick before the injury.

It appears that the person who signed the death certificate had never seen the deceased during life. He was not present at death nor for three hours thereafter. No physician saw him within sixteen days of his death. No autopsy was performed after death. Nor do the circumstances, reasons or facts appear on which was based the statement that the cause of death was cardiac valvular disease. And furthermore the certificate bears on its face a notice that " The Department of Health of the City of New York does not certify to the truth of the statements made thereon, as no inquiry as to the facts has been provided for by law." The certificate being at most presumptive evidence only is entirely destroyed by the testimony of Dr. Smith and the circumstances under which it was made. The finding above set forth in order to sustain the award must rest on a legal foundation. It cannot be presumed but must be proved. (*Matter of Belcher* v. *Carthage Machine Co.*, 224 N. Y. 326; *Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 id. 435; *Matter of Eldridge* v. *Endicott, Johnson & Co.*, 228 id. 21.) The error of the Commission consists in basing its conclusion solely on the unsupported and uncorroborated death certificate, which certificate constituting only presumptive evidence was conclusively overcome by the other evidence in the case under the authorities cited.

The chief medical examiner of the Commission rendered an opinion, but it does not supply the deficiency, *first*, because his opinion was not given as evidence with an opportunity for cross-examination, but was furnished to the Commission outside of the hearing, and *second*, because his opinion assumes the cause of death as stated in the death certificate and is based thereon. The Commission accepted this opinion and made its findings accordingly. The Commission and its chief medical examiner both fell into the same error.

If the Commission had disregarded the death certificate and had merely found that death resulted from the accident, basing such finding on the fact that the deceased was in good health at the time of the accident and was in poor health from that

time until the time of his death, a different question would be presented. The difficulty is that the Commission has not adopted that theory, but on the contrary has found as a fact inconsistent therewith that he was not in good health at the time of the accident.

The award should be reversed and the matter remitted to the Commission.

All concur, except JOHN M. KELLOGG, P. J., dissenting, with an opinion.

JOHN M. KELLOGG, P. J. (dissenting):

I fear we are overlooking sections 20 and 68 of the Workmen's Compensation Law. The former provides, in substance, that the decision of the Commission shall be final as to all questions of fact; the latter that the Commission is not bound by common-law or statutory rules of evidence, or by technical or formal rules of procedure, except as provided in that law, " but may make such investigation or inquiry or conduct such hearing in such manner as to ascertain the substantial rights of the parties."

We cannot say that the certificate of death is entirely hearsay evidence. It is a certificate required by law (Public Health Law, §§ 373, 377 and 394; Greater New York Charter, §§ 1179, 1203, 1238, 1570 *et seq.*) and is evidence even in an ordinary action. (Code Civ. Proc. § 922.) We are not acting upon a mere presumption created by the statute, which may disappear when evidence to the contrary is produced, but upon a certificate of death, made and filed according to law, and which is legal evidence in all courts. Since the origin of the Workmen's Compensation Law such certificates have always been given probative force by the Commission. If the company's physician, by paid testimony which the Commission does not credit, can absolutely annihilate the death certificate which the Commission believes to be true, it is a startling proposition. The Commission, when the case is closed, may consider all the evidence, and is to weigh the evidence, and any evidence legally received may be given such force and effect as it deserves, especially since this law provides that the Commission's findings of fact are final. We cannot repeal any part of the statute, but must enforce every part of it according to its real spirit.

The certificate was complete in itself and was properly certified. After the assistant registrar of records certified the certificate to be a true copy of the one on file, there was printed upon the blank below his signature a statement that the department of health does not certify to the truth of the statements made in the death certificate, as no inquiry as to the facts had been provided for by law. This means that it was the certificate of the physicians making it and that the board itself was not responsible for the facts certified. That note did not belittle in any way the force which the statute gave to the death certificate.

The question before the Commission was not whether the death was the result of a chronic cardiac valvular disease, but was whether death was the result of the injury sustained. The facts are very simple. The employee was leading three horses from the stable; one " got wild " and they pushed him down and trampled upon him, injuring him severely in several places, dislocating his shoulder, fracturing his arm and injuring him about the chest, leaving a black mark thereon about the size of a small plate, indicating that a horse had jumped upon it. There were several other black marks upon his body, and upon one arm the mark of a horse's shoe was apparent. He had worked continuously up to that time and was apparently in good health. After the injury he was unable to do anything, suffering pain all the while, especially in the chest, and complaining that he was injured internally and wanting an X-ray taken so that he could see what was the matter inside his chest. The company's physician, who examined him shortly after the injury, swears that he found no trouble with the heart, and he thinks the death certificate does not properly state the cause of death. He is unable, however, to give any cause himself. The widow testified that the doctor made no examination of the chest or heart, but simply came in and looked at the patient and told him he would be all right in a few days, giving him no medicine. He apparently was there as a witness for the insurer and not as a doctor for the patient. Dr. Smith's evidence is discredited by the death certificate, the testimony of the widow and by the death under circumstances which seem to show that the death certificate was right and the doctor wrong. It is difficult to see how the Commission could

have found otherwise than that the death resulted from the injury. But we are not interested in that question; the sole question before us is, was there some evidence which tends to sustain the award? If so, it is conclusive.

The Commission, in its findings, refers to the cause of death as stated in the certificate, but its conclusion is that the injuries sustained " so aggravated a previously existing heart lesion as to bring about decompensation and an acute condition which resulted in the death." The fact that he was in apparent good health prior to the injury, and that the wife knew of no heart trouble, is not of much significance. I favor an affirmance.

*Award reversed and matter remitted to the Commission.*