WILLIAM H. ZIEGLER, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, July 3, 1935.

*John M. Wilson* [*Alfred J. Talley* and *Joseph J. Schwartz* of counsel], for the plaintiff.

*Paul Windels, Corporation Counsel* [*Nicholas Bucci* of counsel], for the defendant.

LAZARUS, J.   The plaintiff was employed in the department of sanitation, as a machinist, from January 1, 1933, up to and including July 20, 1934, and was paid at the rate of nine dollars a day, or

one dollar and twelve and one-half cents an hour. He claims that the " prevailing rate " was eleven dollars and twenty cents a day, or one dollar and forty cents an hour, and seeks to recover the difference. The action is based upon section 220 of the Labor Law, of which the following provisions are pertinent:

" The wages to be paid for a legal day's work  *  *  *  to laborers, workmen or mechanics upon  *  *  *  public works  *  *  *  or in connection therewith, shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated." (Subd. 3.)

" It shall be the duty of the fiscal officer, as defined in this section, to ascertain and determine the schedule of wages to be paid workmen, laborers and mechanics on each such public work, prior to the time of the advertisement for bids, and such schedule of wages shall be annexed to and form a part of the specifications for the work. Such fiscal officer shall file with the department having jurisdiction such schedule of wages at least ten days prior to the time of the commencement of the advertisement for bids on all public works proposed to be constructed. The term ' contract ' as used in this subdivision also shall include reconstruction and repair of any such public work." (Subd. 3, amd. by Laws of 1933, chap. 731, in effect May 3, 1933.)

" The ' prevailing rate of wage,' for the intents and purposes of this article, shall be the rate of wage paid in the locality as hereinafter defined to the majority of workmen, laborers or mechanics in the same trade or occupation." (Subd. 5 [a].)

" The ' fiscal officer,' as used herein, shall be deemed to be, on public work performed by or on behalf of  *  *  *  a city, the comptroller or other analogous officer of such city." (Subd. 5 [c].)

" The fiscal officer as herein defined may, on his own initiative, and must, on a verified complaint in writing of any person interested, cause an investigation to be made to determine the prevailing rate of wages in the same trade or occupation in the locality within the state where such public work is being performed." (Subd. 7.)

" The fiscal officer in such investigation shall be deemed to be acting in a judicial capacity, and shall have the right to issue subpœnas, administer oaths and examine witnesses.  *  *  *  and upon such hearing and investigation the fiscal officer shall determine the issues raised thereon and shall make and file an order in his office stating such determination  *  *  *. Upon the entry of such order affecting either the hours of labor or rate of wages any party to the proceeding aggrieved thereby may review the said

proceedings by a writ of certiorari within thirty days from the notice of the filing of the said order in the office of the fiscal officer." (Subd. 8.)

The plaintiff did not establish that the comptroller made and filed an order in his office determining the prevailing rate of wages. Instead, the plaintiff offered in evidence several contracts for public works, made by certain departments of the defendant with various contractors. Each of these contracts contained a schedule which bore a legend substantially as follows: " The following is a schedule of the rates of wages determined by the Comptroller of the City of New York by virtue of chapter 731 of the Laws of 1933 to be paid for all labor covered by and performed under this contract."

And each schedule lists machinists at eleven dollars and twenty cents a day. The plaintiff also offered in evidence letters from the department of finance to several of the borough presidents, furnishing a schedule of the rates of wages, which included machinists at eleven dollars and twenty cents a day.

At best, this indirect or circumstantial evidence simply established a *prima facie* case.

The plaintiff was neither a party to the contracts received in evidence, nor a privy of either party thereto. Hence, the defendant had the right to explain, vary or contradict them. The rule that parol proof is inadmissible to vary or contradict a written contract only applies to controversies between parties to the instrument. (*Folinsbee* v. *Sawyer*, 157 N. Y. 196, 199; *Robert* v. *United States Shipping Board Emergency Fleet Corp.*, 240 id. 474, 478.)

The most that can be said for the letters which were received in evidence is that they contain admissions which tend to support plaintiff's claim. But admissions have no characteristic or quality peculiar to themselves, or distinguishing them from other facts in evidence. As Judge COLLIN said in *Gangi* v. *Fradus* (227 N. Y. 452, 457): " In case they were made in ignorance of the facts or in an abnormal state of mind, or were based in part upon mere opinion, or were made casually or thoughtlessly or insincerely, or under like or analogous conditions or circumstances, they may, in reason, deserve slight consideration or value or none at all." And so, admissions are subject to explanation or correction by parol evidence. It follows that it was open to the defendant to establish all the facts and circumstances surrounding these letters, even though they contradict and vary the writings. (*Komp* v. *Raymond*, 175 N. Y. 102; *Seeley* v. *Osborne*, 220 id. 416.)

In short, while the aforesaid contracts and letters created a presumption that the comptroller determined the prevailing rate of wages payable to machinists, sufficient to make out a *prima facie*

case, the presumption was not a conclusive one. It was a disputable or rebuttable presumption which disappears and ceases to be a legal factor in the case, in the presence of substantial evidence to the contrary. (*Nestor* v. *Pabst Brewing Co.*, 191 App. Div. 312; *Latham* v. *Sheff*, 193 id. 576; *Kennell* v. *Rider*, 225 id. 391.)

On the other hand, the defendant established that following the adoption of the amendment to subdivision 3 (*supra*), in May, 1933, the comptroller caused an investigation to be made to determine the prevailing rate of wages. There was such a wide and irreconcilable difference between the claims of the parties interested that as late as September, 1933, the comptroller had not come to a determination. In the meantime, notwithstanding the serious problem of unemployment, construction work was being delayed. To remedy this situation the comptroller agreed to certify certain rates of wages without determining the prevailing rate. Accordingly, on October 9, 1933, the comptroller wrote to various city departments as follows (italics supplied): " Pursuant to Chapter 731, Laws of 1933, entitled ' An Act to Amend the Labor Law in relation to wages of employees on Public Work ' which directs the fiscal officer as defined in section 220 of the Labor Law, to ascertain and determine the schedule of wages to be paid workmen, laborers and mechanics on public works prior to the time of the advertisement for bids, the following determination has been made.

" The Comptroller will certify to various department heads the rate fixed by the Public Works administrator, under authority of the National Industrial Recovery Act, namely, a minimum of $1.20 an hour; and where agreements exist between employer and employee, the rates in the agreement be continued. This is to be effective until codes are published, or for a reasonable time thereafter.

" *It is distinctly understood that the Comptroller is not fixing a prevailing rate of wages; and it is further understood that this determination does not apply to past contracts.*

" Herewith is attached a list of rates which have been agreed upon and are part of agreements entered into between the Building Trades Employers Association and organized labor."

The schedule inclosed was dated September 28, 1933. It did not include the rate payable to machinists. On November 2, 1933, the comptroller wrote another letter inclosing an amended schedule which included machinists at the rate of eleven dollars and twenty cents a day. It is perfectly clear that the letter of November 2, 1933, must be read together with the letter of October 9, 1933. So read, it is apparent that the comptroller merely certified a temporary rate of wages for machinists, without determining the prevailing rate.

The evidence further shows that although the comptroller stated, in language too clear to be misunderstood, that he was not determining the prevailing rate, the heads of the various city departments mistakenly labeled the schedules of wages incorporated into a number of contracts, as representing the comptroller's determination of the prevailing rate. The statute casts upon the comptroller the duty of making a determination as to the prevailing rate. His is the duty, the responsibility, and the power to decide. No other officer has power to waive the requirement of the statute or to impose liability upon the city by estoppel. (*Lord & Burnham Co.* v. *City of New York*, 251 N. Y. 198, 204; *New York City Employees' Retirement System* v. *Eliot*, 267 id. 193, 203.)

Finally, the plaintiff did not sustain the burden which rested upon him, of establishing a prevailing rate in excess of the wages paid to him by the defendant. (*People ex rel. Rolf* v. *Coler*, 58 App. Div. 347; *McCaffrey* v. *State*, 259 N. Y. 159.) The defendant called a large number of witnesses. Among them were the railroads, utilities and other prominent and important employers of labor. The great weight of the evidence is to the effect that the rate of wages paid to machinists during the period in question ran from sixty-two cents an hour to one dollar and ten cents an hour. In a very few instances *foreman* machinists were paid one dollar and twelve and one-half cents an hour. The most numerous group averaged about eighty-four cents an hour. The plaintiff, on the other hand, was paid at the rate of one dollar and twelve and one-half cents an hour. In this state of the record, I am bound to find in favor of the defendant. Judgment for the defendant in this action, and in the 136 similar actions submitted to me, pursuant to stipulation.