■ PETER J. MUSSO et al., Appellants, v WESTFIELD MEMORIAL HOSPITAL et al., Respondents.—Judgment unanimously affirmed, without costs. Memorandum: Several issues are presented on this appeal but only one is worthy of review. The formal written recommendation of a medical malpractice panel acting pursuant to section 148-a of the Judiciary Law unanimously concluded that neither defendant was liable for plaintiff Peter Musso's injuries. Prior to trial the plaintiffs moved to suppress that part of the recommendation as related to the defendant hospital on the ground that actions against hospitals are not subject to the application of section 148-a of the Judiciary Law. The court denied the motion and the recommendation was later admitted into evidence, albeit over objections based only upon other and untenable grounds (see Fisch, New York Evidence [2d ed], § 20): Nonetheless, the issue is preserved for review (CPLR 5501). We find that the panel's recommendation was properly admitted into evidence. It is claimed by plaintiff Peter Musso that he appeared at the hospital emergency room at approximately 6:30 A.M. on January 13, 1970. Although the hospital records fail to show that Mr. Musso came to the emergency room on that date, he and his son both stated that he was examined by a person who appeared to be a nurse and was told by her that his injury did not warrant calling in a doctor at that hour of the morning. He returned home but when his condition worsened, he came under the care of the defendant doctor on January 15, 1970. Two days later he was admitted to another hospital where it was determined that he was suffering from frostbite and gangrene. A portion of his left foot was amputated and thereafter, due to complications, his leg was amputated below the knee. The sole basis of plaintiffs' claim of liability against the hospital is the alleged act or omission of its emergency room employee in failing to discover and treat plaintiff Peter Musso's condition on January 13, 1970. A hospital is derivatively liable for the negligent acts of its employees committed in the course of employment under the doctrine of *respondeat superior (Bing v Thunig,* 2 NY2d 656; *Berg v New York Soc. for Relief of Ruptured & Crippled,* 1 NY2d 499). Medical malpractice panels were first authorized in 1974 by the enactment of section 148-a of the Judiciary Law (L 1974, ch 146, § 1). It was intended that the use of such panels would "speed up the disposition of medical malpractice cases throughout the State" (Governor's Memorandum, approving L 1974, ch 146, NY Legis Ann, 1974, p 379). The section was thereafter amended to provide, *inter alia,* that the unanimous recommendation of a panel as to the question of liability shall be admissible in evidence at a subsequent trial. The amendment was but one of several concurrently made to various State laws in response to the ongoing medical malpractice controversy (L 1975, ch 109, § 16). The purpose of the 1975 legislation was "To deal comprehensively with the critical threat to the health and welfare of the State by way of diminished delivery of health care services as a result of the lack of adequate medical malpractice insurance coverage at reasonable rates" (Memorandum of State Executive Department, NY Legis Ann, 1975, p 225; Governor's Memorandum, approving L 1975, ch 109, NY Legis Ann, 1975, p 419). It is clear from that broad language and from a fair reading of other

amendments included in the bill (L 1975, ch 109, § 16), that the legislation was intended to relate to medical and hospital malpractice, both of which unquestionably are encompassed in the term "health care services". Other amendments included a definition of " 'Medical malpractice insurance' " as applying to "medical or hospital malpractice by any licensed physician or hospital" (Insurance Law, § 681, subd 2) and required that insurance company reports of claims for "medical malpractice" include the "name and address of physician, nurse, hospital or other person or institution against which claim is made" (Insurance Law, § 335, subd 2, par [a]). The bill also created a separate fund within the State insurance fund to be known as the " 'medical and hospital malpractice fund' " (Workmen's Compensation Law, § 76, subd 2-a, par [1]). Given the comprehensive nature of the legislation, it appears that the Legislature did not intend to exclude malpractice actions against hospitals from the application of section 148-a of the Judiciary Law. In this connection, it is noted that modern-day hospitals employ a variety of persons, including physicians. Logic compels the conclusion that where the injury-producing negligent act or omission occurs in the diagnosis, care or treatment of a patient and is committed by a physician who is acting in the scope of his employment by a hospital, an action against the hospital premised upon such negligence should be subject to the jurisdiction of a medical malpractice panel because the underlying basis of liability is the alleged malpractice of the doctor (cf. *Fiorentino v Wenger,* 19 NY2d 407, 414). His acts or omissions are necessarily of a nature susceptible to the expression of expert medical opinion on the issue of liability (cf. *Comiskey v Arlen,* 55 AD2d 304, 309, affd 43 NY2d 696). That analysis applies with equal force here where the act complained of relates to a medical diagnosis of plaintiff's condition and even though made by a nurse or other emergency room attendant, it is nonetheless of a nature uniquely within the expertise of a properly selected physician panelist (cf. *Comiskey v Arlen, supra; Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169, 175). While we recognize that the distinction between "administrative" acts and "medical" acts as a basis for determining hospital liability has been abolished (see *Bing v Thunig,* 2 NY2d 656, *supra,* overruling *Schloendorff v Society of N. Y. Hosp.,* 211 NY 125), we hold that in deciding the applicability of section 148-a of the Judiciary Law to actions against hospitals or similar institutions, it is the nature of the act rather than the character of the actor which will be determinative (cf. McLaughlin, Civil Practice, 17 Syracuse L Rev 331, 338). We have considered the other issues raised by plaintiffs on appeal and we find them to be without merit. The panel's unanimous recommendation was in proper form and was admissible on behalf of the doctor as well as the hospital. The plaintiffs were afforded an adequate opportunity to cross-examine the panel's physician member (see *Curtis v Brookdale Hosp. Center,* 62 AD2d 749). Finally, even though the constitutionality of section 148-a of the Judiciary Law has been upheld *(Comiskey v Arlen,* 55 AD2d 304, *supra; Kimball v Scors,* 59 AD2d 984), we do not pass upon that issue, since the Attorney-General has not been notified of the constitutional challenge *(Matter of Strongin v Nyquist,* 54 AD2d 1031, mod on other grounds 57 AD2d 638, app dsmd 42 NY2d 998; *Colenzo v Kernan,* 49 AD2d 809; CPLR 1012, subd [b]; Executive Law, § 71). (Appeal from judgment of Chautauqua Supreme Court—medical malpractice.) Present—Marsh, P. J., Moule, Simons, Dillon and Schnepp, JJ.