*40 OPINION OF THE COURT
Ira Gammerman, J.
In the first three of these motions (Rosa, Bleich and Gold) defendant movants seek order directing that each of the instant matters be referred to a medical malpractice panel pursuant to section 148-a of the Judiciary Law. In each case, the court at a prepanel conference, ruled that the case should proceed to trial without being submitted to such a panel and suggested to counsel a motion seeking the relief requested herein. In the fourth motion (Wolitzky) plaintiff asks that his case be set down for trial without being submitted to a section 148-a panel. Inasmuch as all cases involve the same issues, they are consolidated for decision.
It must initially be determined whether the court has discretion to take the action defendant movants object to and plaintiff movant seeks. Assuming such discretion, was it properly exercised?
Section 148-a of the Judiciary Law, enacted in 1974, was one of several legislative responses to the growing concern of the medical profession regarding increasing malpractice insurance premiums (e.g., reduction of the Statute of Limitations from 3 to 2% years [CPLR 214-a]; elimination of the ad damnum clause in medical malpractice complaints [CPLR 3017, subd (c)]; requirement of expert testimony in actions based solely on lack of informed consent [CPLR 4401-a]; and elimination of the collateral source rule in medical malpractice actions [CPLR 4010]).
It was the apparent hope of the sponsors of section 148-a of the Judiciary Law that subsequent to the 1975 amendment, many nonmeritorious cases would be eliminated because unanimous findings of no liability would be received in evidence and result in jury verdicts in favor of defendants. A more generalized goal was the reduction of congested Civil Trial Court Calendars by disposition prior to trial with resultant saving of time, effort and money to the court and the parties. (Report of Ad Hoc Committee on Medical Malpractice Panels, March 19,1980 [the Committee].) That such reliance on section 148-a of the Judiciary Law was misplaced is established by the findings of the Committee that section 148-a of the Judiciary Law has not *41 only failed to solve the malpractice problem, but exacerbated it, that the procedure diluted the effectiveness of pretrial conferences and that the number of medical malpractice actions filed was not reduced as a result of the panel system. Indeed, as the Committee report indicates, the number of medical malpractice actions filed has increased year by year. In New York County, for example, there was a 24% increase in 1981 over 1980.
Rather than facilitating the disposition of cases it is the view of the court, supported by the findings of the Committee, that the functioning of the panel has had the direct opposite effect. A unanimous finding of liability only serves to inflate the plaintiff’s settlement demand. A no-liability determination merely solidifies defendant’s resolve to proceed to trial. In those cases in which the panel is unable to reach a unanimous conclusion, the parties are left where they were before the panel met. It has been estimated that the cost of panel preparation and attendance is approximately $1,500 per party, thereby substantially increasing the cost of litigation (and, presumably, the premiums doctors are required to pay). These costs are in addition to the court costs discussed in the Committee’s. report.
Section 148-a of the Judiciary Law creates demands and imposes burdens on an already overworked court system, particularly in those counties with a large volume of malpractice litigation. For example, in New York County at least 50 malpractice cases are now filed each month. Until recently, panel meetings were held at the rate of approximately 15 to 18 a month resulting in a backlog in excess of 640 cases by the end of 1981. As a result, trials of medical malpractice actions have been delayed for years while efforts are made to assemble the required panels. Such efforts require skill, determination and perseverance. It has been the practice in this county to use a doctor on a panel no more than once a year, lest the doctor, who serves without charge, requests that his or her name be removed from the list of volunteers. Often, panels have to be reconstituted and rescheduled when conflicts appear (p.g., the panel doctor is a defendant in an action being prosecuted by plaintiff’s attorney, or, more often, is represented by *42 defendant’s counsel; the panel doctor is affiliated with an institution named as a party defendant; or the panel doctor is acquainted with one of the defendants and is reluctant to sit on the panel particularly in a case in which the liability may be relatively clear).
Against this background, the court must determine if it was the intention of the Legislature in enacting section 148-a of the Judiciary Law that every medical malpractice case had to be submitted to a panel even though it was readily apparent that the panel could not constitutionally reach a conclusion in the matter.
The sole remaining rationale of the panel is to serve, in effect, as an additional expert witness on two issues on which expert testimony is required in a medical malpractice case: departure from accepted standards of medical care and causal relationship. (Comiskey v Arlen, 55 AD2d 304, affd 43 NY2d 696.) The panel is presented with a set of facts and reaches a conclusion based on those facts, much as an expert does when he testifies to an opinion based on facts postulated in the form of a hypothetical question.
The panel, however, does not deal in hypotheticals. Rather, there must be basic agreement with respect to the facts on which the panel “opinion” is based. The “opinion” of the panel is subject to cross-examination to the extent that the doctor or lawyer member can be called by any party as a witness. That such “opinion” may be based on material not exchanged and available only to the panel members dilutes this right of cross-examination and raises serious questions with respect to the fairness of the panel process.
It cannot seriously be maintained that it was the intention of the Legislature in enacting section 148-a of the Judiciary Law that panels resolve issues of fact and make determinations of credibility. To do so would obviously transcend the outer limits of constitutional tolerance. (See Aldana v Holub, 381 So 2d 231 [Fla].) This limitation has been recognized by the courts and the attorneys litigating in this field in that those medical malpractice cases based solely on a claim of lack of informed consent are not submitted to a section 148-a panel. Obviously, the panel *43 cannot resolve the dispute between the claim of plaintiff patient that he was informed of none of the risks of the procedure and the defense that a litany of dangers was discussed. Similarly, where the defendant doctor denies ever treating a plaintiff patient (and there are such cases), a panel cannot resolve that dispute.
To interpret section 148-a of the Judiciary Law as requiring a panel in medical malpractice cases with basic factual disputes is to conclude that the Legislature acted unconstitutionally in enacting the statute (a conclusion which would violate McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd c) or that it intended that an attorney, a Supreme Court Justice and a doctor spend several hours together discussing a case that they are, by virtue of the Constitution, precluded from acting upon. The court cannot accept the argument that this reflects the intent of the Legislature.
Indeed, the constitutionality of section 148-a of the Judiciary Law merits further examination. Comiskey v Arlen (supra) was decided prior to the issuance of the ad hoc Committee report and obviously without the benefit of the findings made by that Committee. The development of additional information has led two States, Florida and Pennsylvania, to reverse prior decisions upholding the constitutionality of medical malpractice panels. (Aldana v Holub, supra; Mattos v Thompson, 491 Pa 385.)
In Aldana (supra, p 237) the Supreme Court of Florida based its decision not on a re-evaluation of the rationale of its earlier decision, but on “the unfortunate fact that the medical mediation statute has proven unworkable and inequitable in practical operation.”
The Supreme Court of Pennsylvania concluded that a study of the Malpractice Act subsequent to its initial decision upholding its constitutionality revealed lengthy delay and onerous conditions, restrictions or regulations. The court stated that it could not agree that the act’s procedure “‘is reasonably designed to effectuate the desired objective’ of affording ‘the plaintiff a swifter adjudication of his claim, at a minimal cost.’ ” (Mattos v Thompson, supra, p 395.)
*44 Having concluded that this court has discretion to rule that certain cases are not to be submitted to a panel, it is necessary to determine whether that discretion was properly exercised here.
In Rosa, the sole claim on which the action is based is that an anesthesiologist failed to report to the hospital delivery room for a period of approximately 45 minutes after being called and, as a result, plaintiff Marcelle Rosa was compelled to give birth • without any anesthesia. In spite of the allegations in the bill of particulars and complaint, it is apparent to the court that this is the issue between the parties and, indeed, the attorney for the plaintiff in his affidavit submitted in opposition concedes this. At the prepanel conference, it was the position taken by defendants that the anesthesiologist delayed not 45 minutes, but rather 30 seconds in arriving at the delivery room. The record is clear that there are basic factual disputes raised between the parties, factual disputes which preclude the panel from functioning constitutionally in making any finding.
Similarly in Bleich, the claim of malpractice is based on the allegation of the plaintiff that for an extended period of time, while under the care of the defendant doctor, plaintiff reported rectal bleeding. It is plaintiff’s claim that in the face of these complaints, the defendant doctor did nothing further to investigate plaintiff’s condition which eventually was diagnosed as cancer of the colon. Defendant raises no question that the failure to investigate a history of rectal bleeding given to a doctor for a substantial period of time would be a departure from accepted medical practice. Rather, defendant maintains that plaintiff never complained or advised defendant of any rectal bleeding. The panel, obviously, cannot resolve the factual dispute between the patient and doctor with respect to what complaints were made and received. Again, it would be constitutionally impermissible for a panel finding to be made in the face of this conflict.
In Gold, there is a sharp conflict of fact between the parties. At a physical examination on June 5, 1978, defendant discovered a node (which was later determined to be malignant) in plaintiff’s left groin. Plaintiff alleges that he *45 was told by an employee of defendant that the node was fatty tissue and that he should not be concerned about it. Defendant, on the other hand, maintains that plaintiff was told to keep the area under observation and that a pathological examination was the only way of determining the nature of the node. This, plaintiff denies. For the panel to resolve this dispute between the parties would involve it in impermissible fact finding.
In Wolitzky, it is the plaintiff who, after waiting 15 months for a panel which has yet to be convened, is seeking relief in the form of an order determining that his case should proceed to trial without being submitted to a section 148-a panel. Again, we have a sharp factual dispute. It is plaintiff’s claim that although decedent requested that defendant Cornell hospitalize him, Dr. Cornell told his patient that he had nothing to worry about, and that his condition was not serious. Defendant Cornell, on the other hand, maintains that he told decedent that he had a tumor and that hospitalization and work-up was necessary, and that it was decedent who refused hospital admission. Thus, a clear question of fact is raised between plaintiff and defendant Cornell precluding a panel decision.
With respect to defendant Mendelowitz, no factual dispute exists. For plaintiff to obtain the relief he seeks, therefore, the action against defendant Mendelowitz must be discontinued.
The court appreciates the desires of the defendants here to take full advantage of all of their legal rights. Those rights, however, do not include the right to an unconstitutional panel determination or to the convening of a panel which is precluded from reaching a conclusion.
The motions in Rosa, Bleich and Gold are, therefore, denied. The motion in Wolitzky is granted on condition that the action against defendant Mendelowitz is discontinued. Should such discontinuance be filed, the matter is set down for trial in Part 27, on April 5, 1982. Should plaintiff elect not to discontinue against Dr. Mendelowitz, his motion is in all respects denied.