OPINION OF THE COURT
John P. Balio, J.
This is an application to disqualify and discharge the designated physician member of a medical malpractice panel, or in the alternative, for a change of venue to Albany County.
FACTUAL BACKGROUND
Plaintiff’s husband was admitted to the Crouse-Irving Memorial Hospital at about 4:00 a.m. on February 1, 1980 and shortly thereafter, died while on the operating table. Plaintiff claims that her husband suffered a fatal reaction to anesthesia diagnosed as malignant hyperthermia. She further claims that Dantrolene, a widely accepted emergency medicinal treatment for malignant hyperthermia *837 was not available at the hospital. Negligence and malpractice are predicated on conducting the surgery without an available supply of Dantrolene.
The Onondaga County medical malpractice panel clerk advised plaintiff’s attorney that Dr. Peter B. Kane had been designated as the physician member of the malpractice panel assembled pursuant to section 148-a of the Judiciary Law and Part 1028 of the Rules of the Appellate Division, Fourth Department (22 NYCRR 1028.1 et seq.). Upon discoveringjhat Dr. Kane was a consulting anesthesiologist at the defendant .hospital, plaintiff objected to Kane’s designation. The panel clerk referred to the objection to the Hon. William R. Roy, Administrative Judge for the Fifth Judicial District, who rejected the claim because “there is no conflict in the appointment of Dr. Kane since local anesthesiologists have privileges at all local hospitals but are not employees of the hospital except for team chiefs”. The rejection letter further advised that a motion could be instituted at Special Term for the relief sought.[1]
Plaintiff urges that Dr. Kane must be disqualified to avoid even the appearance of prejudice or impropriety. She contends that due to Dr. Kane’s affiliation with the hospital as an anesthesiologist, he may be required to consider and/or admit that he was negligent in providing anesthesia without an available supply of Dantrolene. No claim of actual bias is offered.
Defendants contend that Dr. Kane should not be disqualified unless evidence is presented of actual bias, and that the mere fact that a physician is affiliated with a hospital is not per se basis for disqualification. They urge that any potential for bias may be adequately explored at the time of trial.
*838 MALPRACTICE PANEL LEGISLATION AND PROCEDURE
The medical malpractice panel procedure was instituted in 1974 to expedite the disposition of malpractice cases and reduce litigation costs. (Bryant v University of Rochester [Strong Mem. Hosp.], 72 AD2d 965; Musso v Westfield Mem. Hosp., 64 AD2d 851.) It was anticipated that many nonmeritorious cases would be eliminated by unanimous findings of no liability that would eventually result in similar jury verdicts, and that Trial Calendars would be reduced by pretrial settlements subsequent to a panel recommendation. Recent study suggests that these hopes have not been realized and that the malpractice “problem” has been exacerbated by the panel process (Rosa v Mohan Kulkarni Unibell Anesthesia, 113 Misc 2d 39.) The court observes that screening panel procedures established in two other States have been invalidated by the highest court of each State upon the ground that, although facially valid, the practical effect of actual implementation violated procedural due process and the right to a jury trial, respectively. (See Aldana v Holub, 381 So 2d 231 [Fla]; Mattos v Thompson, 491 Pa 385.) Although both State statutes were substantially different from the New York procedure, both cases are illustrative of increasing judicial concern for the operational effect of malpractice panels. (See Medical Malpractice Screening Panels: A Judicial Evaluation of Their Practical Effect, 42 U of Pitt L Rev 939.)
Medical malpractice actions continue to appear with frequency upon our Trial Calendars. A considerable number of these actions are the oldest cases on the calendar. A number of reasons could be stated for such a circumstance, but more often than not, malpractice cases have not been tried in their regular order because the panel clerk has been unable to obtain the physician member of the panel, and no panel hearing has been convened by the calendar Judge.
To reduce the potential for conflicts and thus heighten the capacity for timely hearings and trials, the Fourth Department Rules provide for the creation of two panels in the Fifth Judicial District — one in Onondaga County that includes the Counties of Onondaga, Oswego and Jefferson, and the other in Oneida County, including the Counties of *839 Oneida, Herkimer, and Lewis. (See 22 NYCRR 1028.1, 1028.2 [b].) Once the medical society determines the relevant medical specialty, the calendar Judge may designate the physician member from a list of physicians in the tricounty panel area.
In the present case, Dr. Kane was designated the physician panel member. According to the 1980-1981 Medical Directory of New York State, Dr. Kane was then an attending anesthesiologist at the Veteran’s Administration Hospital and associated (or consulting) anesthesiologist at Upstate Medical Center and Crouse-Irving Memorial Hospital, all in Syracuse. The defendant, Dr. Louis Retz, was then an orthopedic surgeon at Crouse-Irving, an assistant orthopedic surgeon at Upstate and an associate orthopedic surgeon at Community General Hospital in Syracuse. The defendant, Dr. Carmen Gelormini, was then an emergency physician at Crouse-Irving and the senior attending physician in internal medicine at St. Joseph’s Hospital. Defendants, Dr. David Leivers and Dr. Pirrko Serog, were then attending anesthesiologists at Crouse-Irving and Upstate. The defendant, Derzakarian, was not listed in the directory. In sum, one or more of the defendants has a relationship with all of the major hospitals in the Syracuse area.
The court’s review of the list of doctors and hospital staff list contained in the directory does not reveal that anesthesiologists have privileges at all area hospitals as claimed. Doctors (all of whom were listed as anesthesiologists) Kaufman, Davaluri, Fung, Omar, Warner, Thomson, Roberts, Samonte, Majmundar, Canceko, Fenlon, Shanmugam, Ketcham, Ascioti, Austin, Castro, Schramm, Agnello, Sacco, D’Addario, Dobkin, Racz, Hawke, Holbrook, Couche, Nolan, Schermerhorn, and Mowakeaa had only one listed affiliation and of these, only Drs. Kaufman, Davaluri, Fung, Omar and Warner were affiliated with the_ defendant hospital. Numerous other anesthesiologists had more than one affiliation, neither of which included Crouse-Irving.
With these facts at hand, the issues presented are: (1) What is the requisite showing for disqualification of a panel member — actual bias, or the appearance of prejudice or impropriety?; and (2) If mere appearance of impro *840 priety may be a basis, is a physician’s affiliation with the defendant hospital per se, or under the facts of this case, a basis for disqualification? Subsumed in these issues are the questions concerning the extent that administrative efficiency and ease in the designation of panel members should be considered and, as well, the degree that these administrative considerations may impinge upon due process and right to jury trial considerations.
REQUISITE PROOF FOR DISQUALIFICATION
Either party, at the time of trial, may question the physician member of a unanimous panel as to his qualifications with respect to the panel recommendation and any bias or prejudice that the doctor may have possessed concerning the action and the parties. (Bernstein v Bodean, 53 NY2d 520, 529; Luce v St. Peter’s Hosp., 85 AD2d 194; Virgo v Bonavilla, 71 AD2d 1051, affd 49 NY2d 982.) Indeed, considerable liberality is now permitted not only as to qualifications respecting the case, but also the details of the panel hearing and the panel’s recommendation. (Bernstein v Bodean, supra, at p 528.)
Clearly, trial examination as to bias is essential to proper jury assessment of witness credibility and without such examination, constitutional issues might well be raised. (See, e.g., the discussion in Luce v St. Peter’s Hosp., supra, at pp 196-197.) However, the time of trial is not the appropriate occasion to first raise the issue of bias. (Virgo v Bonavilla, 49 NY2d 982; Luce v St. Peter’s Hosp., supra.) The statute requires that the issue be raised prior to the panel hearing. (Judiciary Law, § 148-a, subd 2, par [d]; Bernstein v Bodean, supra.) The reason for this time frame is obvious. First, it avoids protracted delay that would result if a hearing and/or trial de novo was required.[2] Second, if the panel decision was not unanimous, the bias of a panel member would not be placed before the jury’s scrutiny. Absent the bias (i.e., with the designation of an impartial panelist), the recommendation may have been unanimous.
*841 At the prehearing stage, the concerns of expense and delay (which constitute part of the foundation for the panel procedure) need not play the more significant role they have at the trial stage. (See, e.g., Luce v St. Peter’s Hosp., supra.) When made prior to the hearing, little delay is occasioned since the designation of a new panel member is all that is required. Hence, public policy and due process concerns do not require the burden of showing actual bias.
Further, it may be difficult to demonstrate actual bias prior to the panel hearing without a separate evidentiary hearing. Even subsequent to a hearing, it might be difficult to assess the influence of a particular communication or relationship. (See Seabrook v Good Samaritan Hosp, 75 AD2d 849.) Thus, in some cases, to require a finding of actual bias would entail additional proceedings that would inevitably result in delay and increased litigation costs.
A malpractice panel serves in a quasi-judicial capacity. (De Camp v Good Samaritan Hosp., 66 AD2d 766.) Although a jury is not bound by the panel’s unanimous recommendation (Bernstein v Bodean, supra), the panel’s recommendation and a panelist’s testimony provide the jury with expert testimony or evidence to influence and assist the jury in reaching its verdict. (Luce v St. Peter’s Hosp., supra.) Indeed, it appears that the Legislature intended the panel recommendation to impact upon the jury. (Bernstein v Bodean, supra, at p 527; Rosa v Mohan Kulkarni Unibell Anesthesia, 113 Misc 2d 39, supra.) Under the circumstances, the panelists must be viewed no differently than Judges in terms of their qualifications to resolve the issues of law and fact. (De Camp v Good Samaritan Hosp., supra.) Thp test, therefore, is not whether actual bias existed, but whether there is an appearance of impropriety. (Murphy v Telesha, 67 AD2d 701; De Camp v Good Samaritan Hosp., supra; Santola v Eisenberg, Supreme Ct, Onondaga County, Feb. 22, 1982, at p 6, Miller, J.)
Clearly, more panelists will be disqualified upon a showing of an appearance of impropriety than if actual bias was the requirement. As well, the likelihood of an increased number of disqualifications will add to administrative burdens of assembling a panel. Nevertheless, the integrity of the panel must be above reproach, and disqualification *842 at the prehearing stage assures minimal administrative inconvenience within the statutory scheme.
THE AFFILIATION ISSUE
Defendants claim that the mere fact that Dr. Kane is affiliated with defendant hospital does not require disqualification. For the reasons that follow, the court disagrees.
The mere fact that two physicians were in the same class at medical school or occasionally socialize or attend professional meetings where mutual concerns and problems are discussed does not amount to an appearance of impropriety. (Virgo v Bonavilla, 49 NY2d 982, supra; Kletnieks v Brookhaven Mem. Assn., 53 AD2d 169.) Communication between a panelist and a defendant concerning the issues in the case constitutes a clear appearance of impropriety (Seabrook v Good Samaritan Hosp., supra; Santola v Eisenberg, supra) as does the existence of an attorney-client relationship between a panelist and a defendant’s attorney on an unrelated case (De Camp v Good Samaritan Hosp., supra).
The court does not believe that any affiliation or relationship, however remote, constitutes the appearance of an impropriety. As previously noted, the defendant doctors, considered collectively, have some sort of affiliation with all of the major hospitals in the Syracuse area. In malpractice cases involving surgeries, a physician would have to be drawn from outside the county to serve as a panelist, and the strains upon administrative efficiency and capacities would be intolerable. For example, in Oswego County, nearly every physician is affiliated with the Oswego Hospital in Oswego, New York. The mere inclusion of Oswego Hospital as a party defendant would eliminate all Oswego County physicians as potential panelists. Such a per se rule is not warranted.
Here, however, two of the defendants are attending anesthesiologists at the defendant hospital. The designated physician panelist is an associate (or consultant) in the same department at the same hospital. The gravamen of the malpractice claim is that anesthesia was provided without the availability of a certain medication. The unavailability may have occurred on other occasions and may *843 have involved Dr. Kane. The court concludes that Dr. Kane’s affiliation with defendant hospital under the facts of this case is a conflict that constitutes the appearance of an impropriety. (See, in this regard, Rosa v Mohan Kulkarni Unibell Anesthesia, supra, at pp 41-42.)
Policy considerations support this result. The designated relevant specialty is anesthesiology. As previously noted, a considerable number of anesthesiologists practicing in the greater Syracuse área have no affiliation with CrouseIrving Memorial Hospital or the defendant anesthesiologists. Undoubtedly, a good number of these specialists, like Dr. Kane, have no significant relationship with either Dr. Retz or Dr. Gelormini. Moreover, such relationships are less important to a hearing and recommendation of the alleged acts of malpractice, which bear heavily upon the practice of anesthesiology. Hence, no significant imposition is placed upon administrative concerns and, in any event, such concerns are greatly outweighed by the need to preserve the integrity of the panel.
At the prehearing stage, the court must consider ethical appearances. If the panel fails to make unanimous findings, the jury will never have the opportunity to scrutinize the physician panelist as to bias. As well, the impropriety may deprive the plaintiff or defendants of a unanimous finding in their favor. This deprivation would, of course, continue to have impact at the time of trial since panel recommendations were intended to assist and/or influence juries. To allow a panelist to serve despite the appearance of improprieties would thus create issues of due process and right to jury trial endangering the validity of the panel process.
Lastly, judicial and attorney members of the panel are required to avoid the slightest appearance of impropriety. (Code of Judicial Conduct, canon 2; Code of Professional Responsibility, EC 9-1, 9-6; DR 9-101.) The court does not believe the ethics of the medical profession to be less demanding. (De Camp v Good Samaritan Hosp., 66 AD2d 766, supra.)
Therefore, it is the decision of this court that Dr. Peter Kane be disqualified from serving as the designated physi *844 cian panelist in this action and that the designation of a successor panelist be referred to the calendar Judge without delay pursuant to 22 NYCRR 1028.4. The motion for change of venue is denied.

. The court observes that a motion to disqualify a member of the panel should be directed to the judicial member of the panel. (Judiciary Law, § 148-a, subd 2, par [d]; Bernstein v Bodean, 53 NY2d 520, 525.) The papers before the court do not reveal the identity of that Justice, and in view of the suggestion made in the letter and in the absence of any objection by defendants to the undersigned’s determination of the motion, the court has determined the matter.

. Certain delays may be inevitable. The prejudice may not be discoverable prior to the hearing or events suggesting bias may transpire after the hearing. (See, e.g., Seabrook v Good Samaritan Hosp., 75 AD2d 849; De Camp v Good Samaritan Hosp., 66 AD2d 766.) In such a case, the motion must be allowed upon discovery after the hearing.