In the Matter of HAMPTONS HOSPITAL & MEDICAL CENTER, INC., Appellant, v NORMAN S. MOORE, as Chairman of the Public Health Council of the State of New York, et al., Respondents.

Second Department, April 7, 1980

## APPEARANCES OF COUNSEL

*Milbank, Tweed, Hadley & McCloy (Adlai S. Hardin, Jr., Dorothy A. Doherty* and *Stephen J. Blauner* of counsel), for appellant.

*Robert Abrams, Attorney-General (Joseph W. Henneberry* and *George D. Zuckerman* of counsel), for respondents.

**OPINION OF THE COURT**

COHALAN, J.

This CPLR article 78 proceeding was commenced to enjoin the respondents, *inter alia,* from re-evaluating a favorable initial determination of public need for the establishment of a proposed hospital at Eastport in Suffolk County. The Supreme Court, Special Term, entered a judgment on April 25, 1979, which dismissed the petition. This appeal followed.

We reverse.

The facts reveal that from 1972 through 1975, petitioner submitted a series of applications in order to secure approval for the establishment and construction of a hospital (see Public Health Law, §§ 2801-a, 2802). Petitioner commenced the authorization process by submitting an application for establishment (see Public Health Law, § 2801-a). The subsequent approval by the respondent Public Health Council (the Council), subject only to certain financing conditions, necessarily reflected a conclusion that public need existed (see Public Health Law, § 2801-a, subd 3). Although this approval was conditional, the Council and respondent Department of Health proceeded over a three-year period to solicit, review, and act upon a series of applications filed pursuant to section 2802 of the Public Health Law, despite the statutory proscription against such action until the initial application for establishment is secured (see Public Health Law, § 2802, subd 2). Several of these applications were approved, subject only to the previously imposed conditions; the initial determination of public need was thereby reaffirmed (see Public Health Law, § 2802). In addition, after each approval, forms covering the next step in the application process were provided and assistance in their preparation was offered. Significantly, petitioner was further advised to file these applications within a prescribed period of time.

The approvals, however, remained conditional, as petitioner encountered difficulties in securing proper financing. Although petitioner eventually succeeded in securing mortgage commitments, the Council ultimately devised a new formula to evaluate public need. This new formula focused on the statistical need of the entire County of Suffolk rather than the immedi-

ate area of the proposed hospital site. Despite five years of substantial time and effort and alleged expenditures of $1.5 million, the determination of public need was reversed and petitioner's application denied.

Petitioner then commenced this proceeding pursuant to CPLR article 78, inter alia, to enjoin respondents from redetermining public need.* Special Term denied the petition, concluding, in effect, that the Council retained the authority to reconsider nonfinal approvals and that in light of the provisional nature of these approvals, petitioner's expenditures had been unreasonable. We disagree.

Petitioner asserts a three-pronged attack upon respondents' action. It contends that respondents lacked authority to reevaluate public need; that in any case, they should be estopped from an unfavorable redetermination; and that public need remains in existence.

■ Preliminarily, respondents contest the jurisdiction of the court, asserting that petitioner's failure to exhaust its administrative remedy of a public hearing should bar judicial review. The doctrine of exhaustion of administrative remedies, however, is a flexible one; where the agency's action is challenged as unconstitutional or beyond its authority, or where resort to the remedy would be futile, it need not be followed *(Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57). Undeniably, petitioner's challenge of respondents' unfavorable determination on the merits had been premature. Administrative review of public need determinations would normally provide the agency with an opportunity to develop a consistent scheme of regulation and afford it the opportunity to apply its expertise to the matter prior to judicial review *(Watergate II Apts. v Buffalo Sewer Auth., supra,* p 57). However, petitioner's claim that respondents had acted wholly beyond their authority and its claim of estoppel were properly before the court. Challenge to the authority of an agency has been specifically enumerated as an exception to the exhaustion doctrine *(Watergate II Apts. v Buffalo Sewer Auth., supra* p 57). This court has recently reached a similar result *(Matter of Dobbs Ferry Hosp. Assn. v Whalen,* 62 AD2d 999). As to the issue of futility, we conclude that no purpose would be served by requiring administrative review of petitioner's claim of estoppel. Subdivision 3 of section 2801-a of the Public Health

---

* A public hearing has been held in abeyance pending the outcome of this proceeding.

Law directs the Council to reject all applications for establishment where it finds public need to be lacking; as the Council has no discretion in the matter, it could not, as a matter of law, grant petitioner's claim of estoppel. The nature of the claim therefore requires judicial review for a proper resolution.

It appears, however, that the judicial reviewability of the Council's determination here under CPLR article 78 is substantially in doubt. Rather than constituting a "final" order, as required by CPLR 7801 (subd 1), the resolution under attack herein expressly stated that "the Council is considering disapproving" the application for establishment and that "disapproval shall become final unless the applicants request a hearing". The requested hearing has, as noted above, been held in abeyance pending the outcome of this proceeding.

Moreover, the establishment of a right to injunctive relief under section 2801-c of the Public Health Law suggests a legislative intention that violations of rights established under article 28 of the Public Health Law should be corrected by means of injunctive action. This court clearly possesses the power to convert this action to one seeking injunctive relief (see CPLR 103, subd [c]; *Matter of Fritz v Huntington Hosp.,* 39 NY2d 339). Accordingly, the parties necessary to an injunctive action being presently before this court, this article 78 proceeding is hereby converted into an action for an injunction pursuant to section 2801-c of the Public Health Law.

Turning to the merits of the petition, we are faced with a twofold question. First, did respondents have the authority to re-evaluate their initial determination and, if so, should they be estopped from so proceeding? For the following reasons, we answer both questions in the affirmative.

Prior to finalization, an agency's tentative determinations are subject to reconsideration *(Matter of Siegel v Mangan,* 258 App Div 448, affd 283 NY 557). Unlike *Matter of Dobbs Ferry Hosp. Assn. v Whalen (supra),* there were no final approvals granted in the present case which would deprive the Council of its inherent authority to review provisional determinations. Therefore, redetermination of public need was within its power.

Nonetheless, we conclude that it should be estopped from so proceeding. "[W]here a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to

his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise could have raised" *(Bender v New York City Health & Hosps. Corp.,* 38 NY2d 662, 668). The threshold question is whether the complaining party's reliance had been reasonable. Despite the conditional nature of the approval of petitioner's application for establishment, respondents, over a three-year period, supplied a series of sequential applications, offered guidance in their completion, and actually imposed filing deadlines. Petitioner expended substantial time and money in completing these forms and, contrary to the mandate of section 2802 of the Public Health Law, respondents considered the applications on their merits.

In light of the affirmative encouragement given and the time limitations which respondents imposed, petitioner was fully reasonable in completing, at additional expense, the sequential applications. Furthermore, in light of respondents' expedient attitude in improperly accelerating the application process, petitioner should not be deemed to have acted unreasonably in joining in this attitude by completing its preliminary preparations.

The final step required is to balance the degree of injustice against the effect of intervention into the public processes (see *Eden v Board of Trustees of State Univ. of N. Y.,* 49 AD2d 277).

Applying this test to the case at bar, we are impelled to find in petitioner's favor. Unquestionably there is strong public interest in controlling public health facilities to maximize the quality and efficiency of health-related services (Public Health Law, § 2800). However, there is also a strong interest in developing such facilities in public need areas as quickly as is reasonably possible. Apparently, this latter consideration had been given priority by the parties.

Petitioner incurred significant expense over the course of the application process, expending substantial funds as well as the time and efforts of its members. Presumably much of this would be lost if the long-pending application is denied.

Moreover, it is significant that respondents did not allege a change in circumstances which might warrant a revision of the determination; instead, after some five years of consistently finding public need, the Council resolved to apply a new evaluation formula.

The original staff findings of public need (upon which the

Public Health Council's original conditional approval was based) as well as later utilization studies, cited the absence of health care facilities and the sufficiency of supporting population in the "service area" of the proposed hospital. This area was described as being "within the western section of the Town of Southampton and the southeastern section of the Town of Brookhaven located in Southeastern Long Island." The March, 1977 Staff Report on which the proposed disapproval was based, in contrast, relied upon public need computations for all of Suffolk County, including areas served by hospitals more than 40 miles away.

Finally, it should be noted that estoppel would not preclude respondents from pursuing their rights under subdivision 6 of section 2806 of the Public Health Law.

For the above-stated reasons, we hold that the Council is estopped from re-evaluating its initial determination that public need exists. Since said respondent had decided the question of public need against petitioner, it never considered the adequacy of its financing arrangements. The Council should now review petitioner's application to determine whether its financing conditions have been satisfied.

The judgment should be reversed, on the law, and the petition insofar as it seeks to permanently enjoin respondents from a redetermination of public need, granted. Respondents should review petitioner's application pursuant to section 2801-a of the Public Health Law, to determine whether its financing arrangements are satisfactory.

HOPKINS, J. P., TITONE and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered April 25, 1979, reversed, on the law, with $50 costs and disbursements, the proceeding is converted into an action for an injunction pursuant to section 2801-c of the Public Health Law, with the petition and answer deemed to be the complaint and answer in the action, respondents are enjoined from making a redetermination as to public need, and the matter is remitted to respondents for further proceedings consistent with the opinion herein.