OPINION OF THE COURT
Jones, J.
Following introduction in evidence of the recommendation of a medical malpractice panel concerning the question of liability, pursuant to section 148-a of the Judiciary Law, the doctor panel members called as witnesses may be examined, subject to the customary oversight of the Trial Judge, on any matter which will reasonably assist the triers of fact in assessing the probative worth of the panel recommendation.
Deborah Bernstein was the victim of a rare malignancy which originated as a small growth on the left thumb and metastasized first to her arm and then to her lungs, even *524 tually causing her death. During her illness she underwent an extensive course of treatment in which each of the defendant physicians played some part.
This action for medical malpractice was commenced on March 25,1976. At the completion of discovery and all other preliminary proceedings, but prior to trial, a medical malpractice panel consisting of a Supreme Court Justice, a surgeon, a pathologist and an attorney, was convened pursuant to subdivision 2 of section 148-a of the Judiciary Law. Based on their findings, the panel members unanimously recommended that “there is no liability on the part of said defendants”, a recommendation which was subsequently read to the jury in accordance with the statute.
At the trial plaintiff called the panel’s two physicians, Dr. Di Benetto, a surgeon, and Dr. Palladino, a pathologist, as witnesses. Neither was allowed to answer questions put to him by plaintiff’s counsel relating to the basis of his opinions. Indeed, the Trial Judge repeatedly sustained objections to those inquiries which sought to educe either the factual or medical predicate for the conclusions of the individual panel members. In effect, the trial court ruled that the panel physicians could testify on direct only as to the data made available to the panel and the procedures followed by the panel and not as to either their individual opinions or the basis for their participation in the panel’s recommendation.
Thus, when counsel inquired: “On what is the medical basis for your opinion in this case?”, the court directed the witness not to answer and instructed the jury: “No statement or expression of opinion made in the course of the hearing shall be admissible in the evidence, either as an admission or otherwise, in the trial of the action. So that the doctor cannot testify with regard to his opinion, what happened during the course of that panel hearing.”[1]
Following presentation of evidence, the jury returned a verdict in favor of all defendants except one, concerning whom they could not reach a decision; his case accordingly *525 was severed. On appeal the Appellate Division, one Justice dissenting, affirmed. We now reverse, and remit the case for a new trial. We are of the opinion that the limitations imposed by the trial court on the questioning of the physician members of the panel were too restrictive.
Section 148-a of the Judiciary Law makes provision for the establishment of a panel to facilitate the disposition of medical malpractice claims. In essence, as originally enacted in 1974, the statute provides for the following procedures :
All hearings are held before a panel of three members, consisting of a Justice of the Supreme Court, a physician and an attorney (subd 2).[2] The panel doctor and attorney are selected from a list prepared by the Presiding Justice of each respective Appellate Division (subd 2, pars [a], [b]). The listing of doctors is by specialty as is determined and communicated to the court by the Medical Society of the State of New York, a county medical society and/or the New York Academy of Medicine; attorneys selected are required to have trial experience, not confined, however, to the field of medical malpractice (subd 2, pars [a], [b]). Prior to the date set for the hearing any party may object to the doctor or attorney who has been designated, which objection is to be decided by the Justice presiding as a member of the panel (subd 2, par [d]). The panel hearings are informal and without stenographic records (subd 4). As initially enacted section 148-a provided that no statement or expression of opinion made in the course of the hearing would be admissible in evidence either as an admission or otherwise in any trial of the action (subd 4) and contained no provision for introduction of the panel’s recommendation at any subsequent trial.
Subdivision 8, which was added by amendment in 1975 (L 1975, ch 109, § 16), and that is the portion of section 148-a which is pertinent to the issues posed on this appeal, provides:
*526 “If the three members of the panel concur as to the question of liability, a formal written recommendation concerning such question of liability shall be signed by the panel members and forwarded to all parties. In such event, the recommendation shall be admissible in evidence at any subsequent trial upon the request of any party to the action. The recommendation shall not be binding upon the jury or, in a case tried without a jury, upon the trial court, but shall be accorded such weight as the jury or the trial court chooses to ascribe to it.
“If the recommendation is read to the jury or by the trial court, the doctor member or the attorney member of the panel, or both of them, may be called as a witness by any party with reference to the recommendation of the panel only. The party calling such witness or witnesses shall pay their reasonable fees and expenses.”[3]
The paramount issue is to what extent section 148-a, and most particularly subdivision 8, authorizes either party in a malpractice action to question a panel member who has been called as a witness. To be more precise, what is the scope of examination contemplated and permitted by the statutory phrase — “with reference to the recommendation of the panel only”?
None of the parties has offered and independent research has not uncovered anything in the legislative history of the 1975 amendment to indicate the purpose or objective of the amendment or to assist in the interpretation of the statutory diction. Nor do the legal writers provide any assistance, however speculative or indirect. Thus, there is nothing to suggest that the Legislature envisioned the restrictive interpretation imposed by the trial court in this case and advocated by defendants in our court.
Section 148-a of the Judiciary Law was enacted because of what the Legislature perceived as an urgent need to develop a reasonable procedure for addressing the critical problem of increasing malpractice insurance rates. Its pur *527 pose was to bring to the pretrial stage of litigation participatory consideration and evaluation by representatives of the court, the legal profession and the medical profession of the underlying claim, apparently on the theory that the parties would be better equipped to negotiate a setlement, and under greater pressure to settle, if given a preliminary view of the merits of the case.
The Legislature for undoubtedly similar objectives amended section 148-a by the addition of subdivision 8 on the view that the disposition of malpractice claims would be facilitated if the panel’s recommendation was made admissible at the trial and the panel physician and attorney made available as witnesses.
The statutory prescription that the doctor, or attorney, member of the panel, or both, may be called as witnesses “with reference to the recommendation of the panel only” does not describe the scope of the permitted examination with clarity or delineate its boundaries with particularity. We look, nonetheless, to the language employed by the Legislature in the light of the function to be served by the panel recommendation and the interrogation of its members as witnesses.
The objective of the statutory amendment allowing the introduction into evidence of the panel recommendation could only have been to assist the triers of fact in reaching a verdict. The role of the panel was not to supplant the jury (or the trial court, as the case might be); its recommendation was not intended to replace the jury’s verdict (or that of the trial court). The statute explicitly provides that the “recommendation shall not.be binding upon the jury or, in a case tried without a jury, upon the trial court, but shall be accorded such weight as the jury or the trial court chooses to ascribe to it” (subd 8). To impute to the Legislature a purpose to constrain the freedom of jury consideration by substituting therefor, to any extent, the professional judgment of the panel members, and with that objective to insulate their recommendation from the scrutiny of cross-examination, would be to attribute to the Legislature an intention to enact legislation of dubious constitutional validity.
*528 The examination of the panel members can only be comprehended as in furtherance of the legislative objective and thus a means to assist the triers of fact, be they jurors or Judge, to assess the probative worth of the panel’s recommendation. The procedure prescribed for selection of the panel members and the statutory authorization for receipt in evidence serve to authenticate the reliability and to establish the admissibility of the recommendation. There remains, however, for the triers of fact the question of what weight shall be ascribed to it. It is at this point that the statutorily prescribed examination of the panel members becomes significant. Subject to limitations imposed by the adverb “only”, examination is authorized as to any matter which may reasonably assist the'triers of fact in judging the significance and probative worth properly to be accorded the panel’s recommendation. Thus, by way of illustration but not of limitation, such examination might extend to the recommendation itself, the procedures followed by the panel, the materials (documentary and testimonial) considered by the panel,[4] the opportunities for deliberation, the extent of deliberation, the interim and final votes or statements of position of the individual panel members, the education, training and experience of the panel members with respect to the particular issues involved, the factual predicates and the medical bases on which and the reasoning processes by which the panel and its individual members reached tentative and final conclusions. In short, any line of inquiry should be permitted which is found by the Trial Judge in the circumstances of the particular case not to *529 be otherwise inadmissible and to be relevant and material to the assessment by the triers of fact of the evidential persuasiveness of the recommendation.
Two limitations must be recognized and a word of guidance uttered. First, the statute contains the restrictive adverb “only”. We take this to mean that examination shall not be permitted as to the qualifications of the panel member generally but shall be exclusively focused on his qualifications related to and his participation in the panel recommendation. Nor may he be asked to express opinions on hypotheses other than those before the panel. In short he is not to be made an expert witness on behalf of any litigant, but may be examined only with respect to the panel recommendation.
Second, as is true with respect to the examination of all witnesses, the scope and manner of interrogation are committed to the Trial Judge in the exercise of his responsibility to supervise and to oversee the conduct of the trial. Thus, in individual cases it may be that examination will be curtailed as repetitive or cumulative only, as prejudicial, as impermissibly collateral, as abusive, or for other proper reasons. Such constraints are properly left to the sound discretion of the Trial Judge subject to limited appellate review.
We also suggest, but do not now prescribe, the desirability of consideration by the trial court in a jury case, especially on request of a party, of instructing the jury as to the significance to be accorded by it to the testimony of any panel member witness, as well as to the panel recommendation (consider, for instance, the suggested instruction with reference to the panel recommendation and the testimony of panel members set forth in Pattern Jury Instructions 2:150, at p 123 of the 1980 supplement).
Measured against these standards we conclude that the trial court in this case impermissibly restricted the scope of plaintiff’s examination of Drs. Di Benetto and Palladino, and that for this reason the jury verdicts in favor of the three physician defendants must be set aside.
We note that the parties have argued the constitution *530 ality of section 148-a and invited our resolution of their opposing contentions. This issue was not addressed at the Appellate Division, and inasmuch as the case is to be remitted for a new trial, the constitutional issue may never arise; we therefore do not reach or address it (cf. Comiskey v Arlen, 43 NY2d 696).
For the reasons stated, the order of the Appellate Division should be reversed, with costs to abide the event, and the case remitted for a new trial.
Chief Judge Cooke and Judges Jasen, Gabrielli and Meyer concur; Judges Wachtler and Fuchsberg taking no part.
Order reversed, with costs to abide the event, and case remitted to Supreme Court, Nassau County, for a new trial.

. For further exposition of the restrictions placed on examination of panel members as witnesses (see 74 AD2d 364, 366-368).

. The panel may request, as was done here, “an additional doctor having particular expertise in the specialty involved to assist in the determination of the claim” (subd 6).

. Accommodating amendment was made at the same time to qualify what had been the blanket proscription of subdivision 4 by excepting procedures now authorized by the new subdivision 8 from its bar (see n 4, infra.)

. That the scope of examination of panel members when called as witnesses was not to be tightly confined is underscored by the fact that, when in 1975 subdivision 8 was enacted authorizing the introduction on trial of the panel recommendation and the calling of panel members as witnesses, the Legislature also added the exceptions to the previous categorical bar against use of statements or expressions of opinion made in the course of the hearing, contained in subdivision 4. That subdivision was amended to read: “The hearing shall be informal and without a stenographic record. Except as otherwise provided in this section, no statement or expression of opinion made in the course of the hearing shall be admissible in evidence either as an admission or otherwise in any trial of the action. The justice presiding at the hearing shall not preside at the trial. No other panel member shall participate in the trial either as counsel or witness except as otherwise provided herein.” (Pertinent amendments emphasized, L 1975, ch 109, § 13.)