EDWIN ELLENBERGER, as Administrator of the Estate of KIMBERLY ELLENBERGER, Deceased, Appellant, v JOSE PENA et al., Respondents, et al., Defendants.

Second Department, August 16, 1982

APPEARANCES OF COUNSEL

*Fuchsberg & Fuchsberg* (*Norman E. Frowley, Abraham Fuchsberg* and *Bernard Turkewitz* of counsel), for appellant.

*Anthony L. Schiavetti* (*Norman Bard, Sandra Krevitsky* and *Anthony Soscia* of counsel), for Jose Pena, respondent.

*Morris, Duffy, Ivone & Jensen* (*Patricia D'Alvia* of counsel), for Booth Memorial Hospital, respondent.

OPINION OF THE COURT

LAZER, J. P.

The plaintiff in this case claims that his infant daughter's brain damage at birth and her death less than a year later were caused by the negligence of Booth Memorial Hospital and the mother's obstetrician, Dr. Jose Pena, during the course of the mother's labor and the delivery of the child. At the trial, plaintiff's expert witness testified that Dr. Pena's departures from accepted medical practice included delay in the performance of a Caesarean section, incorrect use of the drug oxytocin to force labor, and failure to use an internal fetal heart monitor. Booth's departure involved its house physician's failure to use an endotracheal tube in the resuscitation of the infant after birth.

In an effort to diminish the effect of the medical malpractice panel recommendation that Booth was not liable,[1] plaintiff called the medical member of the panel as a witness. At the court's insistence, Dr. Falik was first examined out of the presence of the jury and was asked for the basis of his recommendation concerning Booth's liability. He replied that he had relied upon the written findings of a neuroendocrinologist or neurologist which stated that the infant's brain damage was a congenital condition that could not be ascribed to the delivery. Although Dr. Falik could not remember the name of the person who had made the findings, he believed they were contained in a report from the Long Island Jewish Hospital, to which the infant had been transferred on the night of birth.

When subsequently permitted to testify before the jury, Dr. Falik was again asked for the basis of his recommendation concerning Booth's liability. Identifying the Long Island Jewish Hospital record as the source of his information, he replied: "I read the examinations of the infant by the specialists who had expressed an opinion that there

---

1. No recommendation as to Dr. Pena's liability was admissible since the panel did not come to a unanimous agreement (see Judiciary Law, § 148-a, subd 8).

was in the central nervous system inborn problems which were to a degree responsible for the picture the infant gave." Upon request of plaintiff's counsel that Dr. Falik point out where such a statement was contained in the Long Island Jewish Hospital record, defendants objected and Trial Term sustained the objection with the comment: "Well, he is not going to read a five-hundred-page section. He says it is in the record." Continuing to press the point, plaintiff's counsel declared: "I wish to cross-examine him about the notes in the record, if he says he considered the record," but the court replied, "[t]hen read something to him. He doesn't have to read it." Since it seems apparent from the record on appeal and the briefs that nothing in the Long Island Jewish Hospital records attributed the infant's condition to a central nervous system problem, plaintiff's effort to discredit the panel recommendation was severely limited by the court's ruling.

Dr. Pena's expert witness testified that the obstetrician had acted in accordance with good and accepted medical practice and that the inducement of labor was a matter of judgment under the circumstances. Booth's expert, Dr. Leon Charash, defended the actions of Booth's house physician (Tara Manandhar) as appropriate and correct and expressed the opinion that the infant had suffered irreversible brain damage at some point prior to birth. The jury found for the defendants.

On this appeal, a principal focus of plaintiff's attention is the trial court's interference with his effort to establish that Dr. Falik, and through him the malpractice panel, relied on a theory erroneously attributed to the Long Island Jewish Hospital record. Under section 148-a of the Judiciary Law, the doctor or attorney member of a malpractice panel may be examined "as to any matter which may reasonably assist the triers of fact in judging the significance and probative worth properly to be accorded the panel's recommendation" (*Bernstein v Bodean,* 53 NY2d 520, 528). The scope of such an examination may, of course, include the factual and medical bases on which the individual members reached their conclusion and the materials considered by the panel (*Bernstein v Bodean, supra,* p 528). Scope and manner of interrogation are — as

is frequently said — matters for the discretion of the Trial Judge (*Bernstein v Bodean, supra,* p 529; *Feldsberg v Nitschke,* 49 NY2d 636; *Martin v Alabama 84 Truck Rental,* 47 NY2d 721; Richardson, Evidence [Prince, 10th ed], § 490) who, nevertheless, may not abuse that discretion. Here, the plaintiff was unduly restricted in his effort to test the factual basis for the panel recommendation as to Booth and to impeach that recommendation by demonstrating that its medical member was misinformed, unreliable or even incredible. The error had another reverberative effect as well — it attributed to the Long Island Jewish Hospital or its staff a diagnosis of brain damage due to "inborn problems" in the infant's central nervous system — a conclusion never arrived at by that institution.

The defendants contend, nonetheless, that any error was cured by plaintiff's later opportunity to cross-examine Booth's expert, Dr. Charash. It is plain from the record that the report which Dr. Falik mentioned and which the malpractice panel had before it was written by Dr. Charash. Defendants' cross-examination argument thus misses the point — plaintiff was trying to impeach Dr. Falik and the panel recommendation which, according to statute, "shall be accorded such weight as the jury * * * chooses to ascribe to it" (Judiciary Law, § 148-a, subd 8). That attempt to challenge the significance and probative worth of the recommendation (see *Bernstein v Bodean, supra,* p 528) in order to mitigate its effect was significantly impeded by Trial Term's restrictive ruling. Thus, despite defendants' attempt to turn the issue to the accuracy of Dr. Charash's opinion of prebirth brain damage, the critical question concerns plaintiff's right to impeach the panel member and the panel's recommendation. For one, the jury should have had the opportunity to ponder whether Dr. Falik's panel vote was influenced by his erroneous belief that the Charash report was part of the Long Island Jewish Hospital record, when actually it was written at a later time at the behest of Booth. Secondly, plaintiff had the right to challenge the care, factual basis and wisdom Dr. Falik had applied in arriving at the panel recommendation. Finally, plaintiff was entitled to attack the witness' believability as an individual. In view of the sharp disparities of opinion

between the respective expert witnesses, the constraint imposed by the trial court is fatal to the judgment in favor of Dr. Pena as well as that for Booth. Although the challenged panel recommendation related solely to Booth, the erroneous rulings served to also taint the case against Dr. Pena.[2]

Since the case is to be retried, we are obliged to consider plaintiff's further claim that Trial Term erred in denying his request to charge that Dr. Tara Manandhar, the Booth Memorial house physician who resuscitated the infant after birth, was not authorized to practice medicine. CPLR 4504 (subd [d]) provides that "[i]n any action for damages for personal injuries or death against a person not authorized to practice medicine under article 131 of the education law * * * the fact that such person practiced medicine without being so authorized shall be deemed prima facie evidence of negligence." On direct examination, Dr. Manandhar conceded that she was unlicensed in New York at the time of the infant's birth, but referred to her certification in India and the fact that she had taken and passed an examination given by the Education Council for Foreign Medical Graduates (ECFMG). Following summations by counsel, and outside the presence of the jury, Dr. Manandhar was recalled as a witness in connection with the court's consideration of plaintiff's request for a charge pursuant to CPLR 4504 (subd [d]). Despite the assertion by plaintiff's counsel that Dr. Manandhar's ECFMG certificate was not the equivalent of a permit to practice from the State Education Department, the court stated that "there has been substantial compliance with the statute" and denied the requested charge.

■ Section 6525 of the Education Law provides for the issuance of a limited permit which enables its holder to practice medicine under the supervision of a licensed physician in lieu of a license. While a foreign physician with an ECFMG certificate is *eligible* to obtain a limited permit (Education Law, § 6525, subd 1, par [2]), the certificate itself is not the equivalent of a permit issued by the State Department of Education. While it thus appears that Dr.

2. Dr. Pena does not contend that the issue does not relate to him; rather, he joins the hospital's argument that the trial court's rulings were proper.

Manandhar was not authorized to practice medicine at the time of the infant's birth, the authorization question was never raised before the jury, which merely heard that she was unlicensed. Since the burden of proof of establishing nonauthorization was plaintiff's, the circumstances described indicate that the failure to charge was not reversible error.

■ Plaintiff's other assertions are meritless. The trial court's erroneous ruling which initially admitted the infant's death certificate only for the purpose of showing death and not to show the cause of death listed on it was cured by the later admission of the certificate for all purposes. We also reject the constitutional challenge to the medical malpractice panel statute (see *Comiskey v Arlen,* 55 AD2d 304, affd on other grounds 43 NY2d 696; *Kimball v Scors,* 59 AD2d 984).

Accordingly, the judgment should be reversed, on the law, and a new trial granted.

GIBBONS, THOMPSON and BRACKEN, JJ., concur.

-Judgment of the Supreme Court, Queens County, dated March 14, 1980, reversed, on the law, and as between plaintiff and defendants Jose Pena and Booth Memorial Hospital, action severed and new trial granted, with costs to abide the event.