WILLIAM FELNER, Individually and as Executor of ADELE E. FELNER, Deceased, Appellant, v WILLIAM SHAPIRO, Respondent.

First Department, June 28, 1983

### APPEARANCES OF COUNSEL

*Fred R. Profeta, Jr.,* for appellant.

*Kenneth Mauro* of counsel (*Schiavetti, Begos & Nicholson,* attorneys), for respondent.

### OPINION OF THE COURT

ASCH, J.

Plaintiff William Felner sued Dr. William Shapiro for wrongful death and pain and suffering suffered by plaintiff's intestate. The complaint alleged medical malpractice because of the failure to timely diagnose and treat a lump found in the breast of plaintiff's intestate, Adele Felner. Her complaint was later diagnosed as a metastasized breast carcinoma which eventually led to her death. After trial before a jury, a judgment was entered for defendant, upon the unanimous verdict.

We find that error committed by permitting certain testimony by Harold Tovell, M.D., necessitates a reversal of the judgment and a remand for a new trial.

Before the trial, a medical malpractice panel, consisting of a Judge, a lawyer and Dr. Tovell, was impaneled pursuant to section 148-a of the Judiciary Law. After a hearing at which attorneys for the parties appeared, the panel made a unanimous finding of liability against defendant doctor. Some time before the trial, a representative of defendant interviewed Dr. Tovell, discussed his views with him and "prepared" him for testimony at trial.

Apparently, Dr. Tovell at some point changed the position he had taken at the panel deliberations. This was not known or made known to plaintiff. Thus, when this trial began, plaintiff was not aware of the change in the opinion then held by Dr. Tovell. As a result, plaintiff's counsel confidently announced in his opening before the jury that a doctor, lawyer and a Judge, all impartial, had agreed upon Dr. Shapiro's liability. Of course, defendant knew Dr. Tovell's testimony would be contrary to the position he had taken at the panel hearing. He, therefore, was enabled to ridicule plaintiff's position, drastically weakening plaintiff's case. This element of turnabout and surprise, in effect, served to deny plaintiff a fair trial.

The dissent is most certainly correct when it states that "[u]nder the statute defendant clearly had the right to call the physician member and examine him with a view to showing the possible defects and flaws in the panel's recommendation." *Bernstein v Bodean* (53 NY2d 520) relied upon by the defendant and the dissent, stands for that proposition but not for the extended doctrine attributed to it, by them.

In *Bernstein,* the Court of Appeals found that the trial court impermissibly restricted the scope of plaintiff's examination when it ruled that the panel physicians could testify on direct *only* as to the data made available to the panel and the procedures followed by the panel, not as to either their individual opinions or the basis for their participation in the panel's recommendation. Insofar as Dr. Tovell was "called as a witness by [defendant] with reference to the recommendation of the panel only" (Judiciary

Law, § 148-a, subd 8), there was no error. Defendant was entitled to call Dr. Tovell to assist the jury in judging the significance and probative worth properly to be accorded the panel's recommendation of liability.

As the Court of Appeals itself found in *Bernstein v Bodean (supra)* the examination could extend to the recommendation itself, the procedures followed by the panel, the materials considered by the panel, the opportunities for deliberation, the extent of deliberation, the interim and final votes or statements of position of the individual panel members, the education, training and experience of the panel members with respect to the particular issues involved, the factual predicates and the medical basis on which and the reasoning processes by which the panel and its individual members reached tentative and final conclusions.

However, in the case before us, defendant and Dr. Tovell went much further. In effect, Dr. Tovell became an expert witness for defendant. This was clearly error and prejudiced plaintiff. Thus, the Court of Appeals has expressly stated: "Two limitations must be recognized and a word of guidance uttered. First, the statute contains the restrictive adverb 'only'. We take this to mean that examination shall not be permitted as to the qualifications of the panel member generally but shall be exclusively focused on his qualifications related to and his participation in the panel recommendation. Nor may he be asked to express opinions on hypotheses other than those before the panel. In short he is not to be made an expert witness on behalf of any litigant, but may be examined *only* with respect to the panel recommendation." (*Bernstein v Bodean, supra,* at p 529 (emphasis added.)

Dr. Tovell went outside the record compiled at the panel hearing of May 8, 1981, in order to justify his change of heart. He testified that his abandonment of the panel's finding was due, in part, to information which he received at the trial (from defense counsel) that the tumor was "anaplastic". When Dr. Tovell was allowed to impeach the panel's finding offering a contrary recommendation, he was no longer providing testimony with respect to the panel's recommendation "only".

Medical malpractice panels are quasi-judicial bodies and, with respect to the status of the panelists: "The nature of his quasi-judicial function is similar to that exercised by a Judge" (*De Camp v Good Samaritan Hosp.*, 66 AD2d 766, 767).

Directly in point is *Matter of Cupo v McGoldrick* (278 App Div 108). The petitioner-appellant there was a homeowner who received an order from the State rent administrator evicting a tenant occupying the ground floor of her home on the ground that she required the space because her heart condition prevented her from climbing stairs. Initially, a hearing was held by the local rent administrator at which both parties and their attorneys appeared and presented proof. This resulted in the order of eviction which was later affirmed by the State administrator in an opinion in which he stated that he had reviewed the record and concluded that there was an immediate and compelling necessity for the eviction. Thereafter, the administrator on his own motion, and without notice to the parties and without further proof or hearing, rescinded his own determination. He did this relying upon an ex parte statement by the tenant that petitioner had been seen by the tenant climbing the stairs unnecessarily, which appeared to the tenant inconsistent with petitioner's having a heart ailment.

This court reversed the order below which had sustained the administrator's action, holding: "A recital of this complex procedure illustrates the reason for the traditional rule regarding finality of decisions, not only by courts, but also by quasi-judicial and administrative bodies and officers * * * 'Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result'" (at pp 111-112).

And again, in *Cupo*, the court held: "The ex parte statement of the tenant that he had seen petitioner unnecessarily climbing the stairs, supplies none of the requisites for reconsideration upon the ground of newly discovered evidence. On such a basis, there would never be an end to

administrative procedure or litigation" (*Matter of Cupo v McGoldrick, supra,* p 112). In addition, it has been held that "due process will not allow an administrative decision-maker to sit in review upon his own decisions" (*Matter of Lowcher v New York City Teachers' Retirement System,* 54 NY2d 373, 377).

Thus, when Dr. Tovell unilaterally impeached the panel's finding, not by explaining the procedures or the materials used by the panel, not even upon cross-examination, but on the basis of new matter, he transgressed the proper boundaries of his authority as a panel member and assumed the role of expert witness for the defendant.

In this case, plaintiff's trial strategy was centered upon the panel's finding. Decisions regarding choice of experts and allocation of resources were made with the unanimous finding of liability in mind. And, as noted, plaintiff's counsel opened to the jury with a statement alluding to the unanimous finding of the panel. Obviously, this very "build-up" by plaintiff's counsel now worked to his detriment and only served to dignify and enhance Dr. Tovell's trial testimony, which was completely unexpected. Counsel for defendant took advantage of this reliance when, on summation, he commented as follows: "Remember when we started this case and we were in the jury room and [plaintiff's counsel] had that piece of paper that he felt was so important, that medical malpractice panel, was so important, I said to you then, 'I am going to show you what that is worth. It's not worth the paper it's written on' and I think that this is what has come to pass during the course of this trial." An administrative decision may not be reconsidered where it has induced " 'reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice' " (*Matter of Hamptons Hosp. & Med. Center v Moore,* 74 AD2d 30, 34-35).

Furthermore, the intent of section 148-a of the Judiciary Law contemplates an administrative decision by the panel members as a whole, arising out of the give and take of a deliberative process. There was no such process when the defense privately persuaded Dr. Tovell to impeach the panel's finding. There was no notice to plaintiff. There was no opportunity for him to present proof. In sum, there was

no hearing. It is axiomatic that due process mandates a full and fair hearing before a finding is made or altered (*Matter of Warder v Board of Regents of Univ. of State of N. Y.*, 53 NY2d 186, 197). The fact that Dr. Tovell became an expert for the defense and changed position before trial but without the knowledge of plaintiff entirely outweighed the silent opinions of the Judge and attorney panel members.

This court need not reach the question of whether there was any impropriety committed by Dr. Tovell conferring with the defendant's attorney before he was called as a witness. "The test is not whether actual bias existed, but whether the circumstances would give the appearance of bias or be reasonably regarded as bias * * * Basic to every judicial and quasi-judicial proceeding is that the integrity of the decision-making body must be above reproach and even the appearance of impropriety should be avoided" (*De Camp v Good Samaritan Hosp., supra,* at pp 767-768; see, also, *Seabrook v Good Samaritan Hosp.,* 75 AD2d 849, where a defendant telephoned a panel physician before the panel findings and where the court remanded for a *de novo* hearing on the issue of malpractice before a new panel; *Scott v Brooklyn Hosp.,* 93 AD2d 577).

Judicial and attorney members of the panel are required to avoid the slightest appearance of impropriety (Code of Judicial Conduct, Canon 2; Code of Professional Responsibility, EC 9-1, EC 9-6, DR 9-101). The ethics of the medical profession are certainly no less demanding.

The denial of due process, therefore, inherent in Dr. Tovell's surprising turnabout, and the strong policy considerations weighing against a quasi-judicial officer's impeachment of his prior decision, establish prejudice per se to the plaintiff.

Accordingly, the judgment of the Supreme Court, New York County (WILLIAM FORD, J.), entered December 24, 1981, after a jury trial, in favor of the defendant, should be reversed on the law and facts, and the matter remanded for a new trial with costs to abide the event.

SILVERMAN, J. (dissenting). I would affirm the judgment appealed from.

Subdivision 8 of section 148-a of the Judiciary Law provides in part with respect to recommendations of medi-

cal malpractice panels: "If the recommendation is read to the jury or by the trial court, the doctor member or attorney member of the panel, or both of them, may be called as a witness by any party with reference to the recommendation of the panel only."

"[B]oth the clear language of the statute and the evident legislative intent supporting its enactment are an unmistakable direction that either party may call the physician member of the panel as a witness with reference to the recommendation. The extent and duration of the examination of the witness will, of course, be subject to the discretion of the court, which should be properly exercised." (*Curtis v Brookdale Hosp. Center,* 62 AD2d 749, 755.) In *Bernstein v Bodean* (53 NY2d 520) the Court of Appeals said: "[T]he doctor panel members called as witnesses may be examined, subject to the customary oversight of the Trial Judge, on any matter which will reasonably assist the triers of fact in assessing the probative worth of the panel recommendation" (at p 523). "Subject to limitations imposed by the adverb 'only', examination is authorized as to any matter which may reasonably assist the triers of fact in judging the significance and probative worth properly to be accorded the panel's recommendation. Thus, by way of illustration but not of limitation, such examination might extend to the recommendation itself, the procedures followed by the panel, the materials (documentary and testimonial) considered by the panel, the opportunities for deliberation, the extent of deliberation, the interim and final votes or statements of position of the individual panel members, the education, training and experience of the panel members with respect to the particular issues involved, the factual predicates and the medical bases on which and the reasoning processes by which the panel and its individual members reached tentative and final conclusions. In short, any line of inquiry should be permitted which is found by the Trial Judge in the circumstances of the particular case not to be otherwise inadmissible and to be relevant and material to the assessment by the triers of fact of the evidential persuasiveness of the recommendation" (at pp 528-529). "[T]he scope of examination of panel

members when called as witnesses was not to be tightly confined" (at p 528, n 4).

Here the panel had rendered a finding of liability. Under the statute defendant clearly had the right to call the physician member and examine him with a view to showing the possible defects and flaws in the panel's recommendation. In that connection defendant had the right to and did bring out what was before the panel when it made its recommendation and what material facts were not before the panel, and that such omitted facts would have resulted in a different opinion, at least by the physician. That is the purpose of giving the attorneys a right to call the panel member "whether the recommendation is favorable or unfavorable". (*Curtis v Brookdale Hosp. Center, supra,* at p 755.)

There was no impropriety in the defendant's attorney conferring with the witness before they called him; that is normal practice with respect to any witness called by a party. There is no showing in the particular case that any impropriety occurred.

It may be that the examination of the physician panel member was somewhat more extensive than some of us might have permitted. But as to that, I note that the plaintiff's cross-examination of the witness contributed in large part to the broadening of the scope of the testimony. In any event, the scope of such examination and cross-examination is a matter "properly left to the sound discretion of the Trial Judge subject to limited appellate review." (*Bernstein v Bodean,* 53 NY2d, at p 529.) I see nothing in the way the Trial Judge exercised his discretion that would justify appellate interference with it.

KUPFERMAN, J. P., ROSS and CARRO, JJ., concur with ASCH, J.; SILVERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on December 24, 1981, reversed, on the law and facts, and the matter remanded for a new trial with costs to abide the event.