■ PAULA S. JORICH, an Infant, by MARTIN JORICH, Her Father and Natural Guardian, et al., Appellants, v BROOKDALE HOSPITAL, Formerly Known as BETH EL HOSPITAL, et al., Respondents. — In a medical malpractice action, plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Queens County (Lerner, J.), entered June 8, 1978, as granted defendants' motions for directed verdicts and dismissed the first cause of action of the complaint. ¶ Judgment reversed insofar as appealed from, on the law and the facts, with one bill of costs, motions denied as to the first cause of action and new trial granted as to that cause of action. ¶ Plaintiff Paula Jorich is afflicted with cerebral palsy of the spastic quadriparesis variety. Her weight after a premature birth following a 29-week gestation period was 2 pounds 12½ ounces. The action is against the estate of Dr. Kurland, the obstetrician/gynecologist who was covering for plaintiff's mother's regular physician at the time of birth, and Brookdale Hospital, the successor to Beth El Hospital, where plaintiff was born. Ms. Jorich claims that defendants undertook certain actions which hastened her birth and resulted in her cerebral palsy condition. After all sides rested, Trial Term granted defendants' motions for directed verdicts dismissing the complaint. The trial court based its decision primarily on the grounds that plaintiff's precipitate birth theory was undermined by a concession by counsel that plaintiff's mother was in labor prior to going to the hospital and that one of plaintiff's expert witnesses based his causation opinions on the assumption that plaintiff suffers from a type of cerebral palsy different from what she actually has. The trial court apparently applied the wrong dispositional standard and misconstrued the evidence presented in support of plaintiff's position and we, therefore, reverse. ¶ Plaintiff's concession that her mother was in labor prior to going to the hospital did not preclude the characterization of the birth as "precipitate", at least within the definition used by Dr. Bernard Cimberg, one of plaintiff's expert witnesses. The standard time limit for a precipitate delivery, according to Dr. Cimberg, is three hours. Plaintiff was born at 10:40 A.M. and she did not concede that her mother was in labor at or before 7:40 A.M. Thus, plaintiff's precipitate birth theory, founded

on the hazards associated with such a birth, was not effectively destroyed by the concession. ¶ It is true that in giving his opinion Dr. Cimberg assumed plaintiff's cerebral palsy affected her legs and one arm, whereas plaintiff's condition does affect, to a minimal extent, her other arm as well. However, another of plaintiff's expert witnesses, Dr. Selene Jaramillo, proffered a causation opinion on a cerebral palsy which affects all four limbs. Thus causation evidence was before the jury for its consideration. ¶ In actuality, there were two conflicting versions of the events surrounding plaintiff's birth. Viewing the evidence in the light most favorable to plaintiff and resolving all questions as to witnesses' credibility in plaintiff's favor (see *Lipsius v White,* 91 AD2d 271), we cannot say there existed no rational process by which the jury could have found in plaintiff's favor (see *Blum v Fresh Grown Preserve Corp.,* 292 NY 241). Accordingly, the grant of defendants' motions for directed verdicts as to the first cause of action was error. At the retrial, members of the malpractice panel may be examined concerning the materials considered by the panel (*Bernstein v Bodean,* 53 NY2d 520, 528). Lazer, J. P., O'Connor, Rubin and Lawrence, JJ., concur.