OPINION OF THE COURT
Charles A. Kuffner, Jr., J.
Petitioners by CPLR article 78 seek to bind respondent New York State Department of Environmental Conservation (herein DEC) to its freshwater wetlands designation of certain portions of land by letter of February 2, 1982, to compel the processing of the State pollutant discharge elimination system (SPDES) application and for other incidental relief.
background
On January 22, 1982, Wohl & O’Mara, licensed land surveyors, sent a survey No. 21847, together with a cover letter (collectively, the O’Mara letter) to Mr. Gordon Colvin, the *952 Regional Permit Administrator of the New York State Department of Environmental Conservation and requested a designation of what portion of this property would be considered a wetland. (See, ECL 24-0703 [5].) The survey, approximately 17 inches by 56 inches, containing parcels in block 7744, 7741, 7740 and 7710, shows an enormous parcel of land. Covertly, the "O’Mara letter” was captioned tax block 7740.
On February 2, 1982, Gordon C. Colvin responded (the Colvin letter) captioning his response: "Irregular parcel of land approximately bounded by Eastwood Ave/Richard Ave/ Raritan Bay/Calcutta Street — 24305—Travis”. However, the contents of the "Colvin letter” refers to freshwater wetlands on one end of the survey (Eastwood Ave., etc.) to tidal wetlands on the other end (land seaward of Surf Ave.). The "Colvin letter” is the DEC’S response required by ECL 24-0703 (5).
On January 28, 1985, the respondent, in response to an application for a SPDES permit, took the position that the application was incomplete because the Department was mapping freshwater wetlands "at the project site”. The respondent’s notice of incomplete application locates the project site as "Richard Ave. & Hylan Blvd., Staten Island.”
Thus, the issue is crystalized — is DEC precluded from requiring a permit because of the Colvin letter of February 2, 1982.
DISCUSSION
I. Ancillary Issues
ECL 24-0703 (5), in relevant part, states: "Prior to the promulgation of the final freshwater wetlands map in a particular area and the implementation of a freshwater wetlands protection law or ordinance, no person shall conduct, or cause to be conducted, any activity for which a permit is required under section 24-0701 of this article on any freshwater wetland unless he has obtained a permit from the commissioner under this section. Any person may inquire of the department as to whether or not a given parcel of land will be designated a freshwater wetland subject to regulation. The department shall give a definite answer in writing within thirty days of such request as to whether such parcel will or will not be so designated. Provided that, in the event that weather or ground conditions prevent the department from making a determination within thirty days, it may extend such period *953 until a determination can be made. Such answer in the affirmative shall be reviewable pursuant to title eleven of this article; such an answer in the negative shall be a complete defense to the enforcement of this article as to such parcel of land.”
Before that issue is addressed a nonissue should be put to rest. The "O’Mara letter” could not and did not mislead Colvin or anyone else at DEC as to exactly what parcel was placed before respondent for wetland consideration. Therefore, the "Colvin letter” designated what was considered wetlands within the meaning of section 24-0703 (5).
Again, before the real issue can be reached another point raised by respondents has to be dealt with, to wit: could the petitioner’s parcel, after the Colvin letter, have additional portions designated a wetlands?
If we look at section 24-0301 we learn that the Commissioner may readjust the map (final map) by following the procedures set forth in section 24-0301 (5). Even though the tentative map has been completed, lo these five years, finalization pursuant to section 24-0301 (5) has never taken place. It was only when a SPDES permit application was filed do we get an attempted change in wetlands designation (nearly four years after the initial designation requested).
The tentative map, as a boundary map (ECL 24-0301 [2]), may be readjusted by the Commissioner of the Department only after considering, among other things, testimony given at a public hearing for which notice has been given (ECL 24-0301 [4], [5], [6]). No such hearing has ever taken place. No authority exists for the DEC to designate any area as a wetland, solely in response to a SPDES permit application, after the filing of the tentative map, without following the proper statutory procedures.
II. Estoppel Against The State
Traditionally, an estoppel could not be invoked against the State in the exercise of its sovereign powers (21 NY Jur, Estoppel, Ratification, and Waiver, § 76). However, exceptions exist which alleviate the hardships created by strict application of the rule. For example, the State may be estopped, as any other individual in a proper case, where it is acting in a proprietary or corporate capacity rather than in a governmental or sovereign capacity (Matter of Carney v Newburgh Park Motors, 84 AD2d 599; 21 NY Jur, Estoppel, Ratification, and Waiver, § 79; Curnen v Mayor, Aldermen & Commonalty of City of N. Y., 79 NY 511).
*954 This is not to say that the government is acting in a proprietary capacity in the case at bar. Unquestionably, the DEC is acting in a purely governmental capacity when it administers ECL article 24, which regulates the uses of certain lands in order to preserve the State’s natural freshwater wetlands. (ECL 24-0103.) But exceptions to the general rule do exist in a proper case.
Additionally, a State or municipality cannot be estopped by unauthorized or wrongful acts of its officers or agents. (21 NY Jur, Estoppel, Ratification, and Waiver, § 81; Ziegler v City of New York, 156 Misc 624, affd 248 App Div 873, affd 253 App Div 764; Town of Guilderland v Swanson, 41 Misc 2d 398, mod 29 AD2d 717, affd 24 NY2d 872.) But this principle is inapplicable to the case at bar, for the Colvin letter was neither unauthorized nor wrongful. In fact, an affirmative duty was imposed upon him to respond to the request made pursuant to section 24-0703 (5), and Colvin was, as a Regional Permit Administrator, a person so authorized to respond. Nothing is inherently wrongful in his failure to designate the subject property as a freshwater wetland.
The provisions of section 24-0703 (5) are unique. Upon request, the DEC is called upon to make a definite determination as to the designation of specified property as a wetland, as that term is defined in the statute. The statute doesn’t end there. It further states, in clear terms, that a negative answer (i.e., that a certain parcel is not a freshwater wetland subject to regulation) is a complete defense to enforcement of the entire Freshwater Wetlands Act. This act includes the requirement of obtaining a permit before regulated activities can be conducted (ECL 24-0701 [1]). Thus, if the act cannot be enforced as it applied to the subject property, no DEC permit is required to conduct the activities otherwise regulated. Section 24-0703 (5) contemplates that the DEC would conduct a thorough investigation of the affected property, and that in some instances a thorough investigation could not be conducted within 30 days. It permits the DEC to extend the 30-day period under certain circumstances which would effectively prevent a meaningful investigation of the facts and an informed response.
Numerous cases found have repeated the general rule that errors or misstatements made by State or municipal officers do not operate to estop the State or municipality from asserting a contrary position at a future time. (City of New York v Wilson & Co., 278 NY 86, rearg denied 278 NY 702; Matter of *955 City of New York [Dickens Ave.], 238 App Div 850, affd 262 NY 699; New York City Employees Retirement Sys. v Eliot, 267 NY 193; Intercounty Operating Corp. v Terry, 181 Misc 362; City of New York v Coney Is. Fire Dept., 170 Misc 787, affd 259 App Div 286, rearg and lv denied 259 App Div 888, affd 285 NY 535.)
Even statements made in formal opinions (Matter of Delman, Inc. v Connell, 140 Misc 675, affd 240 App Div 816), letters (Matter of Carillo v Axelrod, 88 AD2d 681), or maps (Decker v City of New York, 216 App Div 334, affd 245 NY 515) have not been invoked to estop the government from later asserting a new or differing position. However, none of the reported cases denying an estoppel involve a statute remotely resembling the one before the court. To this extent, the issue is novel and one of apparent first impression. Even those cases which have invoked an estoppel against the government recognize that it may be done only in exceptional or unusual cases, or where a manifest injustice would otherwise result. (Eden v Board of Trustees, 49 AD2d 277, 284; Matter of 1555 Boston Rd. Corp. v Finance Administrator, 61 AD2d 187 [2d Dept]; Matter of Prey v County of Cattaraugus, 79 AD2d 205.)
The scheme provided by ECL 24-0703 (5) creates such an unusual and unique situation. It creates an express duty upon the DEC to respond to a request of any interested person as to whether a particular property will be designated as a regulated wetland. Further, the statute puts bite into the duty so created, by expressly creating an affirmative defense to enforcement of the article. The power to designate certain lands a freshwater wetlands is expressly conferred by law (ECL 24-0301), as is the power (and duty) to so designate in response to a written request. Thus, acts of public officials done in the exercise of their powers expressly conferred by law, and done within the scope of their authority, may later estop a State as it would an individual (cf. People v Gustafson, 53 Cal App 2d 230, 127 P2d 627, 634).
The general rule that the State may not be estopped grows out of its sovereign immunity. (California Pac. Bank v Small Business Admin., 557 F2d 218, 224; Equitable Estoppel: Does Governmental Immunity Mean Never Having to Say You’re Sorry?, 56 St. John’s L Rev 114, 118.) No reported cases in this State have directly addressed the issue as to whether this immunity may be waived by a valid legislative enactment except where it acts in a proprietary capacity (i.e., where it *956 acts in the same manner as an individual or corporation would) (Court of Claims Act § 8). A few have repeated a general proposition that there can be no estoppel against the State in the absence of statutory authority (Matter of Jamestown Lodge 1681 Loyal Order of Moose, 31 AD2d 981; People v Minuse, 190 Misc 57, revd on other grounds 273 App Div 457; Matter of Lee, 107 Misc 2d 928). Reported cases in other jurisdictions support this proposition (see, Lee v Lang, 140 Fla 782, 192 So 490; Metropolitan Dade County Water & Sewer Bd. v City of N. Miami, 213 So 2d 482, 485 [Fla]; 31 CJS, Estoppel, § 138).
Exceptions to the general rule that the government may be estopped, the same as an individual, even in the exercise of its governmental or police powers, are recognized in a proper case, provided that the acts of its officers were authorized. (Matter of Di Giacomo v City of New York, 58 AD2d 347, 355, n 4, citing 21 NY Jur, Estoppel, Ratification, and Waiver, § 77, revd on other grounds 46 NY2d 894.) As previously discussed, the Colvin letter was clearly authorized and in fact it was mandated by statute.
The doctrine of estoppel may also be invoked against the government in the exercise of its sovereign or governmental powers where there has been justifiable reliance on the part of the party who seeks to invoke it. (Eden v Board of Trustees of State Univ. of N Y, 49 AD2d 277, supra; Felner v Shapiro, 94 AD2d 317; Matter of Dima Contr. Corp. v Goldin, 92 AD2d 460.) The petitioners were unquestionably justified in relying on the contents of the Colvin letter. Nothing in the letter indicated that it was only an interim determination subject to later amendment. Nothing in the letter reserved any rights to redesignate the property as a freshwater wetland. No other facts existed indicating that the property is in fact subject to regulation until the petitioners’ application for a SPDES permit was rejected as "incomplete pending mapping of freshwater wetlands at project site.”
Petitioners relied on the letter to their financial detriment in that they purchased the subject parcels, for over three million dollars, retained land surveyors, attorneys, engineers, environmental consultants, and accountants, and paid almost $40,000 in real estate taxes. This investment and financial commitments in reliance on the letter have been substantial. Substantial expenditures made in reliance upon an act of a municipality may be the basis for an estoppel if the act is not *957 clearly beyond the scope of the municipality’s authority (see, City of Hudson v Board of Educ., 158 Misc 583).
If the DEC were permitted to ignore the effect of the Colvin letter and insist on a strict application of the act, a manifest injustice would result. The right given to interested persons by ECL 24-0703 (5) to inquire as to whether any given parcel of land is, or will be, subject to wetland regulation would be rendered useless. The clear intent of the Legislature in declaring a negative answer to be a complete defense to enforcement of the freshwater wetlands article would be nullified. The State, as sovereign, ordinarily cannot be estopped from asserting its police powers. The usual principles of estoppel by conduct do not apply to the State when it acts in furtherance of those powers. (21 NY Jur, Estoppel, Ratification, and Waiver, § 76.) Unquestionably, the regulation over the use of lands designated as freshwater wetlands is a valid power reserved by the State in the exercise of its sovereign powers. However, this statute (ECL 24-0703 [5]) changes the general rule that the State is immune from estoppel when it acts within its governmental powers. It specifically declares that a negative response to an inquiry shall be a complete defense to enforcement of the statute by the State. The statute clearly expresses this (see, Dembrod v State of New York, 185 Misc 1061). It is a clear and unmistakable expression that the State has waived its immunity from equitable principles of estoppel against the exercise of its sovereign powers. (Goldstein v State of New York, 281 NY 396; Smith v State of New York, 227 NY 405, 410; Seelye v State of New York, 178 Misc 278, affd 267 App Div 941.) Any other interpretation of this statute would be so narrow as to defeat its purpose (see, e.g., Michael v State of New York, 193 Misc 834).
III. The Remedy
The DEC’S position on this section of the statute is that it merely prevents the DEC from taking administrative, civil or criminal enforcement action pursuant to ECL 71-2303, 71-2305 or 71-2307 while the letter remains in effect. This construction completely ignores the language of the section at issue. It regards the response as a complete defense to "this article The article in which it is found is ECL article 24, entitled the "Freshwater Wetlands Act” (ECL 24-0101). This article is in derogation of the common law and must be strictly construed in favor of the landowner (People v Bondi, 104 Misc 2d 627). This article contains the entire legislative scheme for preserv *958 ing freshwater wetlands, including the creation of tentative and final maps, issuance of permits and amendment of maps. The enforcement provisions cited by the DEC are contained in a completely different article. Its interpretation is without foundation or authority.
If the DEC fails to respond timely to an inquiry, or if the DEC gives a negative response (i.e., that a particular parcel is not subject to regulation), what is the remedy that may be given? Only one case found addresses this issue. In Schiferle v Friedman (91 Misc 2d 39), the DEC failed to respond in a timely fashion to an inquiry regarding a parcel of land. The DEC replied 111 days after the request, and the delay was entirely unexplained. The court also found that petitioners were greatly prejudiced because they had invested considerable sums of money into development. The court’s remedy was to deem petitioners’ application for a sewer construction permit as approved.
CONCLUSION
The result in Schiferle (supra) makes it clear that the courts are empowered to fashion an appropriate remedy where a proper inquiry has been made. The courts need not be deferential to the opinions of the agency where justice requires. Therefore, the court directs (1) that the Colvin letter is an absolute defense to enforcement of any provisions of ECL article 24, (2) petitioners are not required to obtain any permits required by article 24 to develop the subject properties, (3) the DEC is barred and enjoined from seeking any administrative, civil or criminal penalties against petitioners, (4) the DEC is barred from seeking any relief from any court to enjoin any construction or development of the subject properties by petitioners, and (5) the DEC shall process petitioners’ SPDES application for a permit forthwith, and it shall be barred from denying said permit by reason of its incompleteness pending mapping of freshwater wetlands at the project site.
Petition granted to the extent indicated herein.